ROYTIO v. LITCHFIELD.

(Circuit Court of Appeals, First Circuit. January 24, 1902.)

No. 411.

MASTER AND SERVANT—DANGEROUS WORK—SPECIAL SUPERVISION—NECESSITY.
 Defendant operated, in connection with a quarry, a stone-crushing mill. Ledge stone of all sizes were dumped over a cliff, rolled from the dump to a level place at its foot, and thence carted to the mill. Plaintiff and others had been engaged in dumping the stone over the face of the dump, and were ordered by the superintendent to throw certain stones which had accumulated on the dump into the road. Half way down the dump, and opposite where the superintendent was standing, was a place where had been left an overhanging rock, and plaintiff was directed to work at a point several feet below it. Before he had time to pick up a stone, the rock dropped, and injured him. *Held* insufficient to justify a finding that the condition of the dump was other than would naturally have arisen from the acts of plaintiff and his fellow workmen in removing the stone, or that the superintendent knew that it involved a special hazard which the men on the dump could not meet more intelligently than he could, and therefore insufficient to show any reason for special and unusual supervision on the part of the superintendent, so that a verdict for defendant was properly directed.

In Error to the Circuit Court of the United States for the District of Massachusetts.

William A. Pew, Jr., for plaintiff in error.

Herbert Parker (Charles C. Milton, on the brief), for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

PUTNAM, Circuit Judge. This suit was brought under the employers' liability act of Massachusetts. The circuit court directed a

verdict for the defendant, and the plaintiff sued out this writ of error. The case is stated by him as follows:

"The defendant operated, in connection with a quarry, a stone-crushing mill. Stones of all sizes were brought from the quarry, and dumped over a cliff. The dump extended some distance along the face of the cliff, forming coves and promontories. At the foot of the dump was a level place upon which twelve or fifteen employés of the defendant broke up stones taken from the dump, and wheeled them to the crushing mill. At various times these stones were thrown or pried from the dump by the men, who cut them up, under the direction of one Tirrell, who was employed by the defendant as a superintendent to keep the men at work, and see that they did not get hurt. Two general methods were employed to get stones from the dump. When Tirrell wanted large stones, he sent three or four men with bars to pry the large stones down. When smaller stones were needed, Tirrell formed all the men in a line on top of the dump, and they came down, throwing and bowling such loose stones as they could lift in their hands, over the face of the dump and to the road. During this operation Tirrell watched the men from the road, to keep them steadily at work, and see that they did not get hurt. If there were dangerous places, he cautioned the men, ordered them to another part of the dump, or sent men to especially pry down the rocks that made the place dangerous. The plaintiff went to work July 6th, and was injured July 25th. In the afternoon of July 25th, under the direction of Tirrell, the men were rolling small stones over the face of the dump. Many of these stones accumulated on the dump, a few feet from the road. Tirrell ordered the men to come down, and throw these stones into the road. Half way down the dump, and opposite where Tirrell had been standing for half an hour, watching the men at work on the dump, was a place which had been quarried into some days before in such a way as to leave a large rock overhanging a cave, the entrance to which was seven or eight feet high. At the time of the accident this rock overhung and slanted in such a way that it appeared dangerous. This rock was on a part of the dump which projected between two coves. The plaintiff had never been in this place before. He did not work near it, and it was impossible to see the condition of this rock from above it, where the plaintiff had been at work. When Tirrell ordered the workmen to come down the dump, the plaintiff came down through a cove, where he could not see this rock, and when within a few feet of the road Tirrell directed him to come around from the cove, and work in a particular place, which he indicated by pointing first at the plaintiff and then at the place where he wished the plaintiff to work. This place was several feet below, and directly under the overhanging rock. Tirrell did not warn or call the plaintiff's attention to this rock. The plaintiff came around the corner, and directly under this rock. He did not look above him to see what the character of the dump was, but attempted to go to work immediately, relying upon Tirrell, as was the custom, to warn him of any danger. The plaintiff was being hurried by Tirrell, and intended to begin work at once. Before he had time to pick up a stone, this overhanging rock dropped, and, after falling seven or eight feet, rolled down the dump, and pinned the plaintiff's leg against another rock.

"The plaintiff claims that, even if he had looked to see what sort of a place he was ordered to work in, he came so suddenly into the presence of danger that he did not have an opportunity to avoid the falling rock. The rocks generally lay on the dump as they were thrown over the cliff. As the men worked in removing these stones, the stones taken out might let down other stones above. This danger was incidental to the business, and was appreciated by the plaintiff. The plaintiff was not injured by a risk of this kind. Nothing was done by the plaintiff or his fellow workmen on July 25th, preceding the injury, to undermine the rock which fell. It was some distance above the plaintiff, and fell because it had been undermined and left hanging in such a position that some unnoticed cause, not apparently connected with the plaintiff's work, caused it to fall."

So far as the record before us is concerned, we must assume that Tirrell was superintending within the meaning of the employers' liability act. The plaintiff says that Tirrell was negligent in three respects, namely, that he gave the plaintiff an improper order; that he continued the work under dangerous conditions, and failed to exercise a reasonable supervision; and that he failed to act under circumstances which called for a positive action of a precautionary nature,—that is, to say, warning.

The most of these propositions are easily disposed of. The order given was a usual one. The work was dangerous, but it was inherently dangerous, and this fact was apparent to every person of the most ordinary intelligence. The evidence is undoubted that Tirrell was in the habit of giving warnings, and did give the usual warning in connection with the particular order under which the plaintiff was working at the immediate time of his injury. This leaves no proposition to be considered except the one to the effect that Tirrell failed to exercise reasonable supervision.

The circumstances of the case are mainly within that common knowledge which, in jury trials, the court is not only entitled to share with the jury, but must so share, and which, in the absence of any marked peculiarities of the plaintiff,—and such the record does not disclose,—he must also be assumed to share. With the rest are the facts that from the nature of the work on this shifting slope of loose ledge rocks the circumstances involving danger were never exactly the same at different points or at different times; that the methods of avoiding danger were, therefore, necessarily never the same; and that both the existence of dangers and the ways of meeting them were best known to the men engaged on the slope, and could not be known with any degree of certainty to one standing below it, where Tirrell properly stood in directing the work. Consequently, from the necessity of the conditions, any supervision which could be given by Tirrell would be faulty, and could not take the place of the care and means which could be availed of by the men immediately on the slope for their own protection.

So far the case is entirely clear. But the plaintiff maintains that the condition which caused his injury was a particularly peculiar one, not common to the work, visible to Tirrell, and not visible to the plaintiff until he was immediately in the locality, and simultaneously with the falling of the stones which struck him. He therefore contends that there was a special reason for peculiar acts of supervision on the part of Tirrell at that particular time. He claims that Tirrell was in a position where he should have perceived that the situation was a very peculiar one; but on this record the jury would not have been justified in finding that the condition was other than would naturally have arisen from the acts of the plaintiff and his fellow workmen in removing stone in the usual way from the slope, or that Tirrell did in fact know, or should have known, that it involved a special hazard, which the men on the slope could not meet more intelligently than he could, in the way they usually met dangers, as we have already explained. Consequently, the jury would not have been sustained in finding that there was any call

on Tirrell for any special supervision. As, therefore, it would not have been justified in rendering a verdict for the plaintiff on the record before us, the circuit court properly directed one for the defendant.

The judgment of the circuit court is affirmed, and the defendant in error will recover the costs of appeal.