ROCKPORT GRANITE CO. v. BJORNHOLM.

(Circuit Court of Appeals, First Circuit. April 25, 1902.)

No. 421.

**1. MASTER AND SERVANT—ASSUMED RISKS.**

While an employé assumes the known risks of his employment, he assumes them with all of their qualifications, which include the exercise of the care which the employer is accustomed to use to obviate or minimize the danger from such risks.

**2. SAME—SAFETY OF WAYS AND WORKS—CARE REQUIRED OF SERVANT.**

It was not error to refuse an instruction that an employé could not recover for an injury alleged to have resulted from the negligence of the master, in failing to make proper examination and test of a ledge of rock before a blast was made, if he "had as good an opportunity as defendant's superintendent to examine the situation," where he was not charged by his employment with any duty in that respect, and the defect which caused the accident was not so obvious that he must be held to have known of it as matter of law. Railroad Co. v. O'Leary, 93 Fed. 737, 741, 35 C. C. A. 562, applied.

In Error to the Circuit Court of the United States for the District of Massachusetts.

Frank E. Dunbar, for plaintiff in error.
William A. Pew, Jr., for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and WEBB, District Judge.

PUTNAM, Circuit Judge. This case comes up on a writ of error brought by the defendant below. For convenience, we will style it the defendant, and the defendant in error plaintiff. The case was tried to a jury, with a verdict for the plaintiff.

The defendant says that the plaintiff is 25 years old; that for 5 or 6 years he had been working at cutting paving blocks in quarries, during which time he had seen the usual quarrying and blasting operations; that he then went to work for the defendant in its quarry,

where he continued to the time of the accident; that while there he had seen a great number of blasts, including "snapping" or "jogging" blasts; and that he had himself "struck off" 50 or 60 of the latter. The defendant's quarry is one where large stones are quarried. The "snapping" or "jogging" blasts in question in this case are light, intended to slightly move from the ledge large rocks, already split out, and not involving heavy explosions, or throwing rocks in the air unless some portion of the ledge is shaky, or all ready to throw off. Indeed, these blasts are intended to be so managed as to avoid breaking up the ledge.

The plaintiff was a quarryman, although receiving somewhat advanced pay on account of his experience and capacity. He claims to have been injured by a stone thrown out by one of the blasts to a very considerable distance, to which he had retired. He rests his case on the alleged negligence of one Swanson, the defendant's superintendent. Swanson testified, among other things, as follows:

"Before making the blast, I examined the stone to see if it was safe for powder. It is usual to examine the seams to see if they will throw rocks. I thought the split would not throw rocks. I examined the back part and depression. I concluded no stone would fly. Where stone is perfectly solid there is sometimes danger of pieces flying. I hollered to the men a hundred feet away. I always do that, even when I think nothing is going to fly. I holler 'Look up.' I shouted to the people so far away because it is my custom. I blow a whistle when there is danger from a heavy Lewis hole, and shout when there is only a 'jogging' blast. Those are my orders. We mean everybody should look in the air. Sometimes, in 'jogging' blasts, stones will fly. There might be a piece break off. I know when a rock is shelly; find it out sometimes by tapping. I didn't tap this stone to see if it was shelly. It didn't occur to me to tap it. I thought it was all right. I made enough examination to satisfy me the stone was perfect."

The plaintiff claims on this testimony that, on the question whether the stone was safe for powder, Swanson might have determined most satisfactorily by tapping it. Whether he should have tapped it or whether he used reasonable care in view of not tapping it is not before us. We refer to this testimony for the mere purpose of showing the methods of testing whether a ledge is safe for powder or is shelly, with the view of applying properly the propositions on which the defendant claims the verdict should be set aside.

The defendant seasonably and properly moved for a direction for a verdict in its favor on the grounds now submitted to us, and the record shows that it is entitled to their consideration at our hands. The first which we have to consider is couched by the defendant in the following language:

"The evidence in the case shows indisputably that the plaintiff knew and appreciated the danger of being hit by a stone thrown up by the blast. "The doctrine is too well established to require argument that one who knows of a danger and voluntarily exposes himself to it, understanding and appreciating the risk in so doing, is precluded from recovering for a resulting injury."

The last proposition need not be questioned, but the first, to the effect that the evidence shows that the plaintiff knew and appreciated the danger of being hit by a stone, does not meet the case. Of course, as a matter of common knowledge, there is always danger

that any quarryman may be hit by a flying stone so long as blasting in any form is continued; but when an employé assumes the known risks of his employment he assumes them with all their qualifications. An employer cannot set up this rule and deny the employé the benefit of the qualifications. While there is always danger of flying stones, yet it is plain from this record that, as the danger here came mainly, if not wholly, from shelly rock, it was one which might have been largely, if not entirely, guarded against by care on the part of the superintendent of the kind which he was accustomed to exercise. It may be true that such reasonable care would not entirely obviate the danger, but it certainly would minimize it; so that, on clear principles, while the plaintiff must be said to have accepted the danger, he cannot be said to have accepted it without the benefit of its being thus minimized. Therefore, on this proposition, it follows that there is in this record no evidence of any assumption of risks by the employé which waived the minimizing of them by reasonable care on the part of the employer; and, as the verdict of the jury necessarily involves finding that his superintendent did not use reasonable care, and that the plaintiff was injured in consequence thereof, the verdict must stand, so far as this portion of the defense is concerned.

The only other proposition made by the defendant is that the court refused to give the following instruction, which was requested:

"If the plaintiff had as good an opportunity as the defendant's superintendent to examine the situation and determine the liability of material to be thrown up by a blast of the character described in this testimony, and was not excused from making such examination by any assurance of safety or act of the defendant's superintendent, he must be held to have assumed the risk, and cannot recover."

It is apparent that we would not be justified in holding that this request had any application to the facts of the case, because it is entirely plain that the plaintiff did not have as good an opportunity as defendant's superintendent to examine the situation. It must be assumed that he could not leave his work and examine the ledge by tapping it, as the superintendent was able to do. Moreover, the request is not in harmony with Railroad Co. v. O'Leary, 35 C. C. A. 562, 93 Fed. 737, 741. Of course, it is understood that, on questions of general law like this now involved, we have no occasion to examine the local decisions when we have the supreme court to guide us. We there showed that it is settled by the supreme court that it is not the duty of an employé to use "ordinary care in ascertaining the condition of his employer's appliances," and that there rests on him the peril only of "defects known to him, or plainly observable by him." The requested instruction at bar, in that it is based on the claim that the "plaintiff had as good an opportunity as the defendant's superintendent to examine the situation," departs from the law as thus stated by us.

The case comes down, however, to a simple proposition. There is nothing in the record which would have justified the circuit court, or would justify us, in determining that the plaintiff waived the protection which would have come to him from the use of reasonable

care on the part of the superintendent in testing the ledge before the blast in question was made, or in holding that the defect in the ledge was known to the plaintiff or was plainly observable by him, or that he had any duty in reference thereto, and nothing therein which would have justified the circuit court in submitting to the jury any such issue. Therefore, none of the defendant's propositions lay the basis of any exception to be approved by us.

In Roytio v. Litchfield (C. C. A.) 113 Fed. 240, which was also a case of an employé against an employer, alleging negligence of a superintendent with reference to loose rock which had been quarried from a ledge, the court held that a verdict for the defendant was properly ordered; but there the superintendent made use of the usual care to prevent possible injury, and he was not in a position requiring him to understand that there was any requirement for anything unusual on his part. In other particulars, which it is unnecessary to detail, that case was unlike the one at bar.

The judgment of the circuit court is affirmed, with interest, and the costs of appeal are awarded to the defendant in error.