THE ILLINOIS STEEL COMPANY

*v.*

ANDREW ZIEMKOWSKI.

*Opinion filed February 21, 1906—Rehearing denied April 5, 1906.*

1. FELLOW-SERVANTS—*the question of the relation of servants is ordinarily one of fact.* In Illinois the question whether servants of the same master are fellow-servants is a question of fact, and it is only when the facts are conceded, or where there is no dispute whatever as to the facts and they show beyond question that the relation of fellow-servants exists, that, on a motion to take the case from the jury, such question becomes one of law.

2. SAME—*what essential to create relation of fellow-servants.* To constitute servants of the same master fellow-servants, under the rule in Illinois, they must be directly co-operating with each other in a particular business in the same line of employment, or their duties must be such as to bring them into habitual association with each other so that they may exercise a mutual influence upon each other promotive of proper caution.

3. SAME—*when a "steel-blower" is not a fellow-servant of another employee.* A "steel-blower," charged with the duty of sounding a whistle to warn other employees before "blowing a heat," so

that they may get into a place of safety, is, in that respect, a vice-principal of the employer and is not a fellow-servant of the other employees, since the duty of exercising reasonable care to provide employees with a safe place in which to work is a continuing one, which the employer cannot delegate and thereafter avoid liability.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. A. H. CHETLAIN, Judge, presiding.

KNAPP, HAYNIE & CAMPBELL, for appellant.

F. W. JAROS, and FRANCIS J. WOOLLEY, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court affirming a judgment of the superior court of Cook county in an action on the case by appellee, against appellant, for a personal injury. The case was tried in the superior court on a second additional count, filed April 9, 1902, and the first and second additional counts, filed December 19, 1902.

The second additional count filed April 9, 1902, alleged, in substance, that the defendant was engaged in the manufacture of various articles of steel, iron and metals, and had in its plant certain ladles or vessels, with appliances attached thereto, and used by it in said manufacture, and operated various appliances filled with molten metal, slag or other substances, at a dangerously high temperature; that plaintiff was in defendant's employ, engaged in the work assigned to him at or near said ladles, receptacles or vessels so filled; that it was defendant's duty not to operate said vessels, etc., so filled, without giving plaintiff timely notice or warning of danger then known to defendant and not known to plaintiff; that defendant disregarded said duty, and so carelessly and negligently operated and managed said vessels, filled as aforesaid, that by said negligent conduct of defendant, and while plaintiff was engaged in defendant's business and in

the exercise of due care, said molten metal was violently forced up and spattered and spilled in and around the place where plaintiff was working, and to, upon and against the left eye of plaintiff, by means whereof said eye was destroyed and plaintiff's other eye was seriously injured, etc.

In the first additional count, filed December 19, 1902, it is averred, in substance, after stating the defendant's business, that it used a large receptacle, called a vessel, in manufacturing and reducing iron and steel, and that in such use such vessel contained a large amount of iron, steel, slag, etc., in a semi-liquid or molten state, at a high temperature, and that at a certain time in the operation of the same, particles of iron, steel and slag, etc., so heated, were apt to and in the ordinary course of business would be thrown and would fly and spatter from said vessel a great distance, to-wit, fifty feet, thus endangering the lives and limbs of persons working at or near the same and within said distance, and that at another stage in the operation of such vessel this would not occur; that plaintiff was in defendant's employ, engaged in his work and exercising due care; that it was defendant's duty to warn plaintiff when, in the ordinary course of business, that stage of operation of said vessel was to be reached when said heated particles would be thrown, etc.; that the defendant did not so warn the plaintiff, by reason whereof plaintiff was not aware that said stage of operation was reached, and the said heated particles were hurled and flew from said vessel against plaintiff and into his eye, destroying the same, etc.

The second additional count filed December 19, 1902, contains substantially the same averments as the first filed at said date, and, in addition, the following averments, in substance: That it was defendant's custom to give warning that the stage of operation was about to be reached when said heated particles were about to be thrown, and that a whistle was then blown; that plaintiff knew and relied on said custom for his protection; that it was defendant's duty

to so warn plaintiff and to blow said whistle, but defendant, contrary to said custom, did not warn plaintiff or blow said whistle, by reason whereof said substances were hurled, thrown and struck against plaintiff and into his eye.

To these several counts the general issue was pleaded, and the trial by jury resulted in a judgment in favor of the plaintiff for $7500 and costs. The defendant entered timely and proper motions to instruct the jury to find it not guilty, but the motions were overruled and exceptions duly taken.

The material facts in the case are as follows: The plaintiff below was, at the time of his injury, employed in the steel mill of the defendant near Chicago, and worked in a large brick building in which Bessemer steel was manufactured. In the building there were three large egg-shaped vessels, some twenty feet in length and ten feet in diameter, swung on pivots at points between their ends, so that they could be turned from an upright to a horizontal position, so as to receive molten metal poured into them. In each of these vessels were eighteen pipes, or tuyeres, constructed with small holes at the bottom, so that a blast of air could be forced into the pipes, as was necessary in order to convert the metal into steel. When the air was thus forced in, large quantities or particles of the molten metal and sparks were thrown out in every direction, making it dangerous for employees working near the vessels. This blowing is termed, in the process of making steel, "blowing a heat," and at the time of the accident from one hundred and twenty to one hundred and twenty-five heats were blown every twelve hours, but at no particular time. The blowing of each heat was controlled by a man named Howe, called the steel-blower. He occupied a position on a stage or platform a considerable distance from the vessels. It was his duty to blow a whistle located on the platform or stage before each heat was blown, so as to warn the workmen engaged about the vessels and give them an opportunity to get away and escape the danger from the sparks. At the time of the acci-

dent to the plaintiff a heat was turned on while he was near one of the vessels, without the whistle being sounded or any warning whatever given him. The sparks striking him on the back, he suddenly turned around, when a spark or particle of the molten metal struck him in the left eye, completely destroying the sight and otherwise injuring him. Howe, the blower, testified: "The mill work, you may say, practically revolved around the blower; everything that went out really depended and revolved about me." In fact, it is admitted by counsel for the appellant that the steel-blower, from his stage, controlled the vessels in which the steel was blown. The plaintiff was not under his immediate control. His business or employment was to clean certain stoppers which were used in the vessels, and to take care of them by placing them in piles for future use, or, in case they needed repair, carry them to the blacksmith shop. He had worked in the building for a number of years at different employments. For about ten years his work was to pour the molten metal from ladles into the vessels, but at the end of that time he left the employment of the company and did not return for several years, when, as already stated, he was employed in cleaning stoppers, etc., which he continued to do until he was injured. At the time he was injured he was some thirty or forty feet from the blower's stage. At the very time of the accident he was in the act of carrying a stopper-rod with the help of another employee. These stoppers were rods of iron weighing from eighty-five to one hundred and twenty-five pounds. He testified that, at the time, he was stooping down cleaning the stopper and kept hammering with a sledge and chisel, and the first he knew sparks hit him on the neck and head, and he turned and a spark hit him in the eye and on the nose. There is no conflict in the evidence as to the respective duties of the blower and plaintiff. The duties of the former were to superintend and direct the men engaged in the Bessemer process of converting iron into steel, and to give notice, by sounding the

whistle, when a blast or heat was about to be blown, while the plaintiff's duty was strictly confined to cleaning and taking care of the stoppers after they had been used.

An extended statement of the facts precedes the opinion of the Appellate Court, but we deem the foregoing sufficient for this decision.

One of the contentions of counsel for appellant is, that the court erred in refusing to give the peremptory instruction to find for the defendant, because the blower, who negligently failed to give the signal, and the plaintiff, were at the time of the accident fellow-servants. The question in this State whether servants in the employ of the same master are fellow-servants within the rule which exempts the master from liability for the injury of one through the negligence of another, is a question of fact, and it is only where the facts are conceded or where there is no dispute whatever as to the facts, and they show beyond question that the relation of fellow-servants exists, that on a motion to take the case from the jury that question will become a question of law. (*Chicago and Eastern Illinois Railroad Co.* v. *Driscoll,* 176 Ill. 330.) In this case the evidence falls far short of proving conclusively that the relation existed between the employee through whose negligence the injury resulted and plaintiff.

The rule as to fellow-servants in this State was first definitely stated in *Chicago and Northwestern Railway Co.* v. *Moranda,* 93 Ill. 302, and has been followed in later cases. In *North Chicago Rolling Mill Co.* v. *Johnson,* 114 Ill. 57, Justice SCHOLFIELD, (on page 64,) referring to those cases, said: "That ruling requires that the servants of the same master, to be co-employees so as to exempt the master from liability on account of injuries sustained by one resulting from the negligence of the other, shall be directly co-operating with each other in a particular business,—*i. e.,* the same line of employment,—or that their usual duties shall bring them into habitual association, so that they may exercise a mutual influence upon each other promotive of

proper caution. The idea is, that the relations between the servants must be such that each, as to the other, by the exercise of ordinary caution, can either prevent or remedy the negligent act of the other or protect himself against its consequences; and, of course, where there is no right or no opportunity of supervision, or where there is no independent will and no right or opportunity to take measures to avoid the negligent acts of another without disobedience to the orders of his immediate superior, the doctrine can have no application." In the case of *Chicago and Eastern Illinois Railroad Co.* v. *Kneirim,* 152 Ill. 458, we said (p. 466): "The rule in this State is, that where one servant is injured by the negligence of another servant, where they are directly co-operating with each other in a particular business in the same line of employment, or their duties being such as to bring them into habitual association so that they may exercise a mutual influence upon each other promotive of proper caution, and the master is guilty of no negligence in employing the servant causing the injury, the master is not liable."

These cases, and those cited in them, state the doctrine of fellow-servants in this State as it has been held by this court in a long line of decisions. To make the blower and plaintiff fellow-servants within the first branch of the rule, they must have been directly co-operating with each other in a particular business in the same line of employment. It is not sufficient that they were employed by the same master. In order to bring them within the rule they must be directly co-operating in a particular business, as distinguished from indirectly co-operating or co-operating in a general business or employment of the master. (*Chicago and Eastern Illinois Railroad Co.* v. *White,* 209 Ill. 124; *Chicago City Railway Co.* v. *Leach,* 208 id. 198.) In order to be fellow-servants under the second branch of the rule, their duties must have been such as to bring them into habitual association with each other so that they might exercise a mutual influence

upon each other promotive of proper caution. (*Chicago and Northwestern Railway Co.* v. *Moranda, supra.*)   It cannot be said, under the evidence, that Howe and plaintiff were fellow-servants under either branch of the Illinois rule.

It is further insisted that appellee voluntarily took the position assigned him by the appellant, and as he fully knew the surroundings he assumed the risk of his employment, and for that reason cannot recover.   He did not know that the man whose duty it was to give the signal would not perform that duty.

We are also of the opinion that Howe, the steel-blower, as to the plaintiff, occupied the relation of a vice-principal, and not that of a fellow-servant.   It will be conceded that it was the duty of the defendant to provide the plaintiff a safe place in which to work and to use reasonable care to maintain the safety of that place.   That was a continuing duty imposed upon the company which could not be delegated.   In *Belleville Stone Co.* v. *Mooney,* 60 N. J. L. 323, the plaintiff was employed by the defendant in a quarry and worked at a derrick, under a superintendent named Barr.   Under Barr was a sub-boss named Perkins, whose duty it was to light the explosives used in blasting, after previously giving a signal to the other men in the quarry. The men continued to work up to the time they received the signal and then ran to a place of safety.   Perkins fired a blast without giving the plaintiff sufficient warning, and he was struck by a piece of flying rock.   One of the defenses introduced to the action for damages for the injury thus received was that Perkins was a fellow-servant of the plaintiff.   The court said: "Under these circumstances the rule of law held the defendant to the exercise of reasonable care that there should be a space of time reasonably long enough for the workmen to reach a place of safety.   This was the defendant's duty in the actual conduct of the work going on then and there in that quarry, and this was his duty under the system by which the work was being conducted, and it

was a duty the neglect of which would be imputable to the defendant. * * * Perkins, in giving the signal of warning, was in the performance of the duty of the defendant. To him, through the directions of Barr, was delegated the performance of the duty of the master. In the ordinary sense he was a mere foreman and co-servant, but under the direction of his master he was performing that master's duty, and the negligence was imputable to the master. * * * The duty rested on the master to exercise reasonable care to give a reasonably sufficient time for the plaintiff to reach a place of safety, as a part of the duty to provide a reasonably safe place for the plaintiff to work in, and to exercise reasonable care to maintain it as a reasonably safe place. If that duty was cast upon an employee, the defendant was chargeable with the employee's fault."

In *Felice* v. *New York Central and Hudson River Railroad Co.* 14 App. Div. (N. Y.) 345, plaintiff's intestate was killed, while employed as a laborer by the defendant upon its railway tracks in a tunnel, by one of its engines. The court said: "It is the duty of the master to use reasonable care to provide for a servant, so far as the work at which he is engaged will permit, a reasonably safe and proper place in which to do his work, and to that end, if the place may become dangerous by reason of perils arising from the doing of other work pertaining to the master's business different from that in which the particular servant is engaged, to give him such warning of the additional danger as will enable him, in the exercise of reasonable care, to avoid them or to guard himself against them. * * * Whatever means are employed, it is the duty of the master to employ them. And that duty cannot be delegated to any other person. * * * It remains the duty of the master, and the person appointed to perform it is the *alter ego* of the master, for whose negligence the master is liable. (*Bushby* v. *N. L., L. E. & W. R. R. Co.* 107 N. Y. 374.) As to the performance of that kind of duty, the person entrusted with it, if anybody is so

entrusted, is not a co-servant of another employee, but he is for that purpose the master, and his act and his neglect is the act and neglect of the master himself." To the same effect is *Snyder* v. *Railway Co.* 60 Ohio St. 487. In harmony with the doctrine of the foregoing case is *Rogers* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 211 Ill. 126, and cases there cited.

It is not claimed that the plaintiff was working in a place not designated by the defendant. His duties were such that they could have been performed in a room safe at all times. If the defendant chose to have him work in a place which became dangerous at irregular periods and gave him no warning of the approach of danger, it must be held liable for a breach of that duty, which it could not delegate so as to relieve it of responsibility.

It is next insisted that the sixteenth instruction given on behalf of appellee was erroneous, for the reason that it directed the jury to determine from the evidence to what extent and in what manner, if at all, appellee and the blower co-operated or associated in their work, and to what extent, if at all, they were able to influence each other as to caution. It was not the duty of the jury to ascertain to what extent these conditions specifically existed, but it was its duty to ascertain, from all the evidence, whether or not the appellee and the blower were fellow-servants. The instruction as given did not accurately state the law, but we are unable to see how it could have misled the jury to the prejudice of appellant. The first part of the instruction correctly states the rule of law, as did the seventeenth given on behalf of the appellant. From an examination of the two instructions, together with all the others given, we think the jury were fully informed as to the rights of the appellant.

The judgment will accordingly be affirmed.

*Judgment affirmed.*