## Katy Truty, Appellee, v. Spaulding & Merrick, Appellant.

### Gen. No. 14,950.

MASTER AND SERVANT—*who are fellow-servants.* Servants of a common master are fellow-servants who are brought into close personal association and direct co-operation in the performance of their duties under conditions which give each of them opportunity to exercise toward the other an influence promotive of proper care and caution.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. MERRITT W. PINCKNEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed with finding of fact. Opinion filed April 8, 1910. Rehearing denied April 26, 1910.

**Statement by the Court.** Katy Truty, appellee, brought this action against Spaulding & Merrick, appellant, to recover damages for injuries sustained by her on February 26, 1904, while working for the defendant in its tobacco factory in Chicago. She was injured by the starting of a tobacco cutting machine, as she claims, without warning while she was working at her table near the machine, the crank handle of the machine as it revolved catching her clothing and pressing her against and into the revolving cog wheels of the machine. On the part of the defendant it is claimed that plaintiff, at the time the machine started, was sitting on the end of the machine shaft to which the crank handle was attached.

The plaintiff was, and had been for more than a year prior to the time of her injury, familiar with the cog wheels, shaft and crank handle, during all of which time they were four feet from the table at which she worked and in plain view. She knew their exact position and their action when the machine was running. In the room where plaintiff worked there were eight machines standing in a row along the west side of the room with spaces of three or four feet between the machines. East of the machines, and about four feet from them, stood a row of tables, a table standing opposite to each machine. The machine on which plaintiff was injured was known as No. 3, and it was operated by Chris Eggert. He cut the tobacco in the machine and placed it on the table opposite to his machine where the plaintiff and two other girls worked, spreading the tobacco and so handling it that the dust and small pieces were separated from the larger pieces. Plaintiff's regular and proper position when at work was either at the north or south end of the table, where she was at least three feet from the crank. She claims, however, that she could not stand at the end of the table and sweep the dust and shorts into barrels underneath the table, but in order to do that work she had

Truty v. Spaulding & Merrick, 155 Ill. App. 441.

to stand at the side of the table, which was two feet wide and six feet long.

The passageway running north and south on the east side of the machines was used by the operators of the machines, and to place the tobacco after it was cut on the tables, and by the men who brought the tobacco to the machines. The crank which caught plaintiff's clothing was in shape something like the crank of an ordinary clothes wringer, and extended into the passageway no further than the handle on the end of it. This handle was long enough to take hold of with one hand. The cog wheels and crank by which plaintiff was injured were on the east side of the machine toward the table at which plaintiff worked, and were uncovered and unguarded during the whole time plaintiff worked for defendant.

The evidence shows that just prior to the accident machine No. 3 was not running. Chris Eggert, the operator, was on the west side of the machine oiling it, and accidentally struck his elbow against a lever in such a way that it started the machine and with it the crank-handle which caught plaintiff's clothing.

FRANK M. COX and R. J. FELLINGHAM, for appellant.

F. W. JARO. and FRANCIS J. WOOLLEY, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

The main contentions of the parties relate to the relation of Eggert to the plaintiff, whether it was that of vice-principal, or as fellow-servant; and, second, whether the plaintiff was guilty of contributory negligence; and, third, as to the assumption of risk by the plaintiff; and, fourth, as to the negligence of the defendant.

It is not contended that the various counts in the declaration are insufficient to make the evidence admissible which forms the basis of the contentions of the

plaintiff. We may, therefore, pass directly to a consideration of the questions raised without special reference to the pleadings.

Upon the question of the relation of plaintiff to Chris Eggert, the operator of the machine, it may be observed in the first place that the evidence presents no controversy of fact that Joseph Shirley was the foreman in charge of the cutting, dressing and separating department in which plaintiff worked, at the time she was injured. Shirley was foreman of the entire basement of the factory in the main building and the annex, with the exception of the firemen and elevator men. The cutting machines and the tables referred to in the preceding statement were all in the basement. He had been the foreman for seven or eight months prior to plaintiff's injury. He had run one of the machines for about eighteen years before he was made foreman of the department, and for a portion of that time he had operated machine No. 2, next to Eggert's machine. He succeeded John Nieman as foreman.

Shirley testified that he never gave Eggert any authority to direct or control the plaintiff or the other girls working at the table with plaintiff. He further testified that before he became foreman, and while he was operating the machine next to the one Eggert was operating, and within a short distance of the place where the plaintiff worked, Eggert never showed the plaintiff or the other girls how they should do their work, and never saw or heard him give any orders and directions to the plaintiff as to how she should do her work. Up to the time of plaintiff's injury he never heard the plaintiff or any one say or claim or talk about, or mention at all, any exercise of authority, control or direction by Eggert over the plaintiff and the girls with her at the table. Eggert and Nieman fully sustain Shirley on these points. Upon a consideration of the evidence bearing upon the question as to whether or not Eggert had any authority over the plaintiff and the girls with her at the table

we are of the opinion that he did not have and never had any direct or delegated authority or supervision over them in their work of any kind or description from the defendant.

On behalf of the plaintiff the testimony is, that in the regular course of her work the plaintiff and the girls working with her received orders and directions from Eggert. The plaintiff testified that "when we did work with the tobacco wrong he showed us how to do it." "He gave me these directions that when he started his machine up he always told me to get away. He did those things for a long time, from day to day during the whole time I worked there."

Antonina Bubis, who worked four or five months at the same table with the plaintiff, testified that when Eggert started his machine he told the girls to step aside, and when they did not do their work right he told them that they should do better work. "I didn't understand except he showed us with his hands the tobacco was done wrong."

And Frances Zuber testified that she worked a week at the same table with the plaintiff, and that during that week Eggert told the girl who was standing in the passageway between the machine and table to get out of the way or led her away before starting the machine.

To understand this testimony it must be stated that these witnesses are Polish girls and could not understand English, and Eggert is a German and cannot speak the Polish language. He can indeed speak but little English. He therefore had to lead the plaintiff and other girls away from his machine when he wished to start it.

This testimony on the part of the plaintiff is contradicted explicitly and directly by nine witnesses called by the defendant, and we think from the evidence the fact was that Eggert had nothing to do with the work of the plaintiff and did not direct or criticise the work of the plaintiff or her associates at the table, or show either of them how to do their work. It does not

appear to have been any part of his duty to oversee or instruct them in their work. This was done by the foreman and by him only. Our conclusion from the evidence is that Eggert was not only not given any authority over the plaintiff and her associates working at the table with her, but that he did not in fact assume any such care, responsibility and authority.

It clearly appears from the record that it was Eggert's duty to run the cutting machine in his charge, and after he had cut a quantity of tobacco to place the same upon the table at which plaintiff was at work. It is shown further that when a new or different kind of tobacco was given him to cut, it was necessary for him to run a small amount of the tobacco through his machine and then take the cuts out and put them on the table and spread it and dress it himself in order to see whether the tobacco was being cut properly. The fact that the table at which plaintiff worked was placed near Eggert's machine for convenience and that he thus used it in connection with his work, and the further fact that he was required to place on plaintiff's table all the tobacco which he ran through his machine, brought the plaintiff and Eggert into close personal association and direct co-operation in the preparation of the tobacco for the dry-room, under conditions, which gave each of them opportunity to exercise toward the other an influence promotive of proper care and caution, in the discharge of their usual duties, and that they were therefore fellow-servants. Bennett v. Chicago City Ry. Co., 243 Ill. 420; Crane Co. v. Hogan, 228 id. 338; Illinois Steel Co. v. Coffey, 205 id. 206.

The uncontroverted evidence shows that when the cutting machine was not running the plaintiff was accustomed to go into the passageway between her table and the machine and work on the west side of her table. When she was in this passageway and Eggert was about to start his machine, he frequently ordered or led her out to a place of safety, before starting his machine. From this course of conduct on the part of

Eggert it is argued on behalf of the plaintiff that Eggert was not a fellow-servant but a vice-principal, charged with the duty of warning her seasonably when the machine was about to be started; and the doctrine of Illinois Steel Co. v. Ziemkowski, 220 Ill. 324, is said to apply to and to control the case. We find, however, no similarity in the case at bar and that case. In that case, while Howe had no authority over Ziemkowski, and they were not fellow-servants, Howe was charged by the master with the duty to give timely notice by sounding a whistle when a blast or heat was about to be blown, so as to warn the workmen and give them an opportunity to escape the danger from the sparks. This duty he failed to discharge. He was as to the plaintiff in that case a vice-principal, and his negligence was the negligence of the Steel Company. Eggert was not charged with any duty by the defendant to warn the plaintiff of the obvious and plain danger of getting too near the machine. When he warned the plaintiff and others, as he did frequently, it was not done in pursuance of any duty laid upon him by the defendant, but was in obedience to the human impulse to warn a fellow human being of danger.

Holding as we do, upon the evidence, that the plaintiff and Eggert were fellow-servants, and that the plaintiff was injured through the negligence or unintentional act of Eggert, while oiling the machine, it follows there can be no recovery against the defendant.

Another view of the case leads to the same conclusion. We think it is shown by a clear and satisfactory preponderance of all the evidence that the plaintiff at the time she was injured was voluntarily and negligently sitting upon or leaning against the end of the crank shaft of the machine, and that in so doing she was guilty of contributory negligence. This is shown by the testimony of Annie Gucic, Chris Eggert, Martin Vent, August Grcegwski and Mary Witek. It also appears from the testimony of Rickie Tutak, Eggert, Vent, Grcegwski, Witek, and Rosie Knapczwk that

on numerous occasions the plaintiff persisted in sitting on the end of this crank shaft; and from the testimony of some of these witnesses it appears that just before the accident she was sitting there and laughed when Eggert ordered her away, and that she went away, but almost immediately she returned to the same place and was injured.

It is unnecessary for us to consider the other errors assigned or grounds of reversal urged, for the case is necessarily determined by what we have said above. The judgment is reversed with a finding of fact.

*Reversed with a finding of fact.*