## CONSOLIDATED STONE COMPANY *v.* ELLIS.

### [No. 7,035. Filed June 1, 1910.]

1. APPEAL.—*Presenting Same Question Twice.*—Where the demurrer to the complaint and the motion for judgment on the answers to the interrogatories present the same question, a ruling on the demurrer is sufficient, p. 82.

2. MASTER AND SERVANT.—*Negligence of Fellow Servant.*—At the common law a master is not ordinarily liable for the negligence of a fellow servant. p. 83.

3. MASTER AND SERVANT.—*Safe Place.—Tools.*—Ordinarily where a master has provided for his servants a safe place in which to work, and safe appliances with which to work, he is not liable for transitory dangers produced by the manner in which the work is done. p. 83.

4. MASTER AND SERVANT.—*Methods.*—It is the master's duty to adopt a practical method for the conduct of his work, so as to minimize the dangers thereof. p. 83.

5. MASTER AND SERVANT.—*Neglect of Master's Duty.*—A master is liable for a neglect of his duty, whether committed by him personally, or by some servant delegated to perform it. p. 84.

6. MASTER AND SERVANT.—*Duties.—Method and Manner of Work.*—The selection of the method, and the direction as to the manner, of doing the work, are masters' duties. p. 84.

7. MASTER AND SERVANT.—*Foreman's Orders.—Obedience to.—Warnings of Dangers.*—Where a foreman directed a servant to give his whole attention to constructing a bed of spalls, assuring him that he, the foreman, would warn him of any danger from the stone which was being thrown over the cliff to a point near such bed, but because of the foreman's failure so to warn the servant he was injured, the master is liable. p. 85.

8. APPEAL.—*Harmless Error.—Considering Interrogatories.*—In considering whether alleged errors in giving instructions are harmless, the court may consider the answers to the interrogatories to the jury. p. 89.

From Monroe Circuit Court; *James B. Wilson,* Judge.

Action by Clarence Ellis against the Consolidated Stone Company. From a judgment on a verdict for plaintiff for $1,500, defendant appeals. *Affirmed.*

*Duncan & Batman,* for appellant.

*Cyrus E. Davis* and *R. L. Morgan,* for appellee.

RABB, J.—Appellee sued appellant to recover damages for personal injuries alleged to have been caused by appellant's negligence. Appellant's demurrer to the complaint was overruled, the cause put at issue and a jury trial had resulting in a general verdict for appellee. With the general verdict, the jury returned answers to interrogatories. Appellant's motions for judgment on the answers to interrogatories and for a new trial were overruled, and judgment was rendered in favor of appellee on the verdict.

The errors assigned call in question the sufficiency of the complaint to withstand a demurrer, and the action of the court in overruling appellant's motions for judgment on the answers to interrogatories and for a new trial.

Appellee was injured while at work in the service of appellant in appellant's stone-quarry, by the dumping on him, by one of his fellow servants, of a wheelbarrow load of broken stone from the top of a ledge or cliff of stone beneath which he was engaged at work.

The facts averred in the complaint, and established by the general verdict and by the answers to the interrogatories returned by the jury are, in substance, that appellant had in its service a number of men engaged in quarrying stone. The place in which appellee was required to work when the injury complained of was received was not inherently dangerous, but was temporarily rendered so by the manner in which the work was managed. It became necessary to make a bed of stone spalls for a cut of stone to be turned onto, and it was the duty of appellee and other servants to arrange this bed of spalls. While appellee was engaged in this work, appellant's foreman, to provide the spalls required, directed

VOL. 46—6

other servants of appellant to wheel them to the top of a cliff and dump them over, so that appellee and others engaged in making the bed were required to take the material from the place where it was being dumped over the cliff, while that work was being done by the men above, and there was danger to the men below of injury from the falling stone. To guard against this, appellee was required to keep a close watch on the men so engaged in dumping the spalls. Under these circumstances, appellee was directed by the foreman to divert his attention from the men at work with the wheelbarrows, and give it exclusively to his work in making the bed of spalls, promising, at the same time, to give appellee necessary warning of the danger arising from the work being done by the wheelbarrow men. Appellee obeyed the foreman's order, and while engrossed in his work, and through the negligence of the foreman in failing to give him warning, a wheelbarrow load of stone was dumped on him from the top of the cliff, causing the injury complained of. The failure of the foreman to give warning constitutes the negligence relied upon by appellee to fasten liability for the injury on appellant.

The same question presented on appellant's demurrer to the complaint arises on its motion for judgment on the answers to interrogatories. The points made by appellant are, that it appears from the facts averred in the complaint and from those established by the answers to the interrogatories (1) that the negligent act causing appellee's injury was not that of appellant, but that of appellee's fellow servant; that appellant's foreman, whose failure to warn appellee of the danger from the dumping of the spalls over the cliff, and appellee were at the time engaged in the performance of a duty which each owed to his common master; (2) that the injury complained of arose from a danger not inherent in the working place furnished by appellant to appellee, but from a transitory danger occasioned by the manner in which the work was done by appellant's serv-

ants, and which appellant was under no duty to guard appellee against.

There are certain well-established rules governing the relation of master and servant, among which is the rule that, in the absence of controlling statutory provisions, the

2. master is not liable to the servant for injuries sustained by him while engaged in the master's service, caused by the negligence of a fellow servant, and that the master, having furnished his servants with a safe

3. place in which to work, and safe appliances with which to work, is not liable for injuries to them resulting from transitory dangers arising in the progress of the work, produced by the manner in which the servants discharge the duties they owe to the master. There is also a well-recognized rule governing this relation, that the master owes the servant the duty to exercise reasonable care to furnish him a safe place in which to work, and to exer-

4. cise the same care to keep the place safe, and when the work to be done by the servant is complicated or dangerous, and peril to the servant in the performance of the work can be minimized by adopting some practical system for conducting it, it is the duty of the master to adopt such system. To illustrate: If the master's work requires the coöperation of a number of servants, some of whom are required to handle material or appliances in such manner that others will be in danger therefrom, unless timely warned, and timely warning will eliminate such danger, it is the duty of the master, under such circumstances, to make provision for such warning. Upon these general rules, there is no discord in the authorities, and to them appellant and appellee each appeal to support their respective contentions —appellant insisting that the facts fall within the rules that exonerate the master from liability for injury to a servant occasioned by the negligence of his fellow servants, or that resulted from a transitory peril arising in the progress of the work, and caused by the manner in which it was carried

on, and appellee insisting that the facts bring the case within the rules requiring the master to furnish the servant a safe place in which to work, to adopt rules for safely conducting the business, and to give warning to servants of dangers arising from the manner in which the work is conducted.

These rules must each be construed with reference to the other. While it is true that a master is not liable for the negligent acts of a fellow servant, yet it is also true that one occupying the position of servant of a common master may also be entrusted by the master with the performance of masterial duties, and the exercise of a master's prerogative. So it is not the title or rank of the person whose alleged negligent acts are being considered, but the nature of the act itself that must determine whether it was the negligence of the master or that of a fellow servant. The line of demarkation that separates the duties of the master from those of the servant is by no means clearly defined and easy to follow; nor is it always easy to determine when a given state of facts are within the rule requiring the master to adopt safe methods for conducting the business, or within the rule exonerating the master from liability because the injury complained of arose out of a transitory peril caused by the manner in which the servants carried on their master's work.

It is sometimes said that the character of the duty, whether masterial or otherwise, is to be determined by considering whether it is a duty of construction, preparation or repair on the one hand, or of operation on the other. *Chicago, etc., R. Co.* v. *Barker* (1908), 169 Ind. 670, 17 L. R. A. (N. S.) 542, and cases cited.

While this formula is undoubtedly correct as applied to the cases of the character there under consideration, it will not fit every state of facts. If the act in question was the exercise of the prerogative of the master, or if it was the performance of a duty of the master, whether in construction, preparation or repair, or in car-

rying on the work in hand, it is the master's act. It is a master's right to direct what work his servants shall do, and when and how it shall be done. And in directing the manner in which his work shall be done, it is the master's duty not to expose the servants to unnecessary peril in carrying it on.

In giving the direction to appellee to divert his attention from the men engaged in dumping stone over the cliff, and to give it to his own work, the foreman was clearly not

7. performing any duty a servant owes to his master; he was exercising a masterial right, and therein he represented the master, and thereby imposed upon the master the duty to protect the appellee, by proper warning of the danger, which but for the exercise of this master's prerogative, this direction to the servant in the performance of his work, the appellee's own vigilance would have furnished.

In the case of *Taylor* v. *Evansville, etc., R. Co.* (1889), 121 Ind. 124, 6 L. R. A. 584, 16 Am. St. 372, the court said in deciding the case: "The obligation to make safe the working place and the materials with which the work is done, rests on the master and he cannot escape it by delegating his authority to an agent. It is also the master's duty to do no negligent act that will augment the dangers of the servants. In this instance, Torrence was doing what the master usually and properly does when present in person, for he was commanding and directing the execution of what he commanded. By his own act he made it unsafe to do what he had commanded should be done."

We think this decision correctly states the law, and that it furnishes the rule that should govern the facts presented here. In this case, the foreman was doing precisely what Torrence did in the case just cited. He was commanding the work to be done, and directing how it should be done. And even had the foreman made no specific promise to give appellee the warning of the danger from the falling stone, when he required, as he had a right to do, that appellee direct his entire attention to his work, diverting it from the men who

were creating the danger by dumping the rock over the cliff, he necessarily imposed upon his master the duty to warn. Considering, as established by the condition shown to exist, the duty of the master to furnish some one to give warning of the danger, it appears that the foreman himself undertook to give this warning. It is not questioned but that he was a suitable person to be entrusted with this duty, and the question still remains whether the master is responsible for the negligence of the servant furnished to give warning.

It is held by numerous and respectable authorities that where it is a master's duty to provide warning to his servants, and he has furnished a suitable servant and charged him with the performance of this duty, the master's obligation to the servant has been fulfilled, and thereafter he is not liable for the negligence of the servant in failing properly to perform his duty, and that such servant so furnished is a fellow servant of those who are at work for the same master, and liable to injuries resulting from his negligence. *Luebke* v. *Chicago, etc., R. Co.* (1885), 63 Wis. 91, 23 N. W. 136, 53 Am. Rep. 266; *Ring* v. *Missouri Pac. R. Co.* (1892), 112 Mo. 220, 20 S. W. 436; *Hermann* v. *Post Blakely Mill Co.* (1896), 71 Fed. 853; *McLaine* v. *Head & Dowst Co.* (1902), 71 N. H. 294, 52 Atl. 545, 58 L. R. A. 462, 93 Am. St. 522; *Roytio* v. *Litchfield* (1902), 113 Fed. 240, 51 C. C. A. 197; *Armour* v. *Hahn* (1884), 111 U. S. 313, 4 Sup. Ct. 433, 28 L. Ed. 440; *Zeigler* v. *Day* (1877), 123 Mass. 152; *Ocean Steamship Co.* v. *Cheeney* (1890), 86 Ga. 278, 12 S. E. 351; *Donovan* v. *Ferris* (1900), 128 Cal. 48, 60 Pac. 519, 79 Am. St. 25; *Martin* v. *Atchison, etc., R. Co.* (1897), 166 U. S. 399, 17 Sup. Ct. 603, 41 L. Ed. 1051.

On the other hand, it is held by numerous and equally respectable authorities that the duty to warn servants of danger is a master's duty and not delegable. In the case of *Hendrickson* v. *United States Gypsum Co.* (1907), 133 Iowa 89, 110 N. W. 322, 9 L. R. A. (N. S.) 555, the supreme court of Iowa said on this subject: ''The true test, as we under-

stand it, whereby to determine whether the master is responsible for the act of the servant is to find out whether the person in question is employed to do any of the duties of the master. If this be the test, then we are brought to the crux of this case at once. Was it a masterial duty to see that warning was given before blasts were fired in the mines in order to make or keep the place a safe one in which to work? We think it was. This warning was for the benefit of employes in order to make the place in which they were working a safe one. It was not an incident to the blasting, but the performance of an entirely different duty, to wit, a duty, which the master owed his employes, and he could not so delegate this work as to relieve himself of the negligent conduct of the person to whom that delegation was made. Had defendant set men to work in this mine without establishing some system of warning, and they or some of them without knowledge of that fact, were injured by the firing of the blast, we apprehend no one. would contend that defendant was not liable. If this be true, then the duty of giving warning is a masterial one, which cannot be so delegated as to relieve the master of responsibility. And, as we have already said, if a master has undertaken to give warning before a blast is set off, failure to give such warning will constitute actionable negligence as to one who is injured by reason of the failure to give it." A very able dissenting opinion in the case of *McLaine* v. *Head & Dowst Co., supra,* accords herewith. See, also, *Belleville Stone Co.* v. *Mooney* (1897), 61 N. J. L. 253, 39 Atl. 764, 39 L. R. A. 834; *Gerrish* v. *New Haven Ice Co.* (1893), 63 Conn. 9, 27 Atl. 235; *Mississippi Cotton Oil Co.* v. *Ellis* (1894), 72 Miss. 191, 17 South. 214; *St. Louis, etc., R. Co.* v. *Triplett* (1891), 54 Ark. 289, 15 S. W. 831, 16 S. W. 266; *Lake Shore, etc., R. Co.* v. *Lavalley* (1880), 36 Ohio St. 221; *Lake Shore, etc., R. Co.* v. *Murphy* 1893), 50 Ohio St. 135, 33 N. E. 403; *Anderson* v. *Ogden Union R., etc., Co.* (1892), 8 Utah 128, 30 Pac. 305; *Tedford* v. *Los Angeles Electric Co.* (1901), 134 Cal. 76, 66 Pac. 76,

54 L. R. A. 85; *Coffeyville, etc., Tile Co.* v. *Shanks* (1904), 69 Kan. 306, 76 Pac. 856; *Erickson* v. *St. Paul, etc., R. Co.* (1889), 41 Minn. 500, 43 N. W. 332, 5 L. R. A. 786; *Illinois Steel Co.* v. *Ziemkowski* (1906), 220 Ill. 324, 77 N. E. 190, 4 L. R. A. (N. S.) 1161.

In the case of *Evansville, etc., R. Co.* v. *Holcomb* (1894), 9 Ind. App. 198, an action was brought to recover for injuries sustained by a car repairer while at work on a car on appellant's repair track. The negligence charged was failure of appellant to put up a signal flag to protect appellee while at work, and to give appellee warning of the approach of cars upon the track where the car he was engaged in repairing was located. It appears that a flagman was charged with the duty of giving notice to the car repairer of the approach of cars upon the track, a duty which he neglected to perform, and, as a result, appellee was injured. Appellant claimed exemption from liability, on the ground that the negligence which produced the injury complained of was the negligence of a fellow servant. It was held in that case, that the "duty of the master concerning his servant's working place cannot be delegated by the master to another so as thereby to absolve himself from liability. Whoever may be chosen to perform this duty for the master, the master himself must answer for any neglect in its performance. This proposition is now established by the decided weight of authority. * * * This now brings us to the consideration of appellant's claim, that by selecting a competent man to notify appellee of the approaching engine, and by his assumption of that duty, appellant had done all that was required of it, and was not responsible for the manner in which the brakeman performed, or failed to perform, this duty. According to this instruction, the only means provided for the protection of the car repairer, and to keep safe the working place, was this notice. No steps were to be taken by him for his own protection. He was simply called upon to work where directed. While thus engaged at the work, and in the place

to which he had been especially assigned, at work necessarily requiring close attention, he had a right to expect that his master would use reasonable care to protect him by keeping safe the place where he was working. If advised of the existence of such a rule as that set out in the instruction, he would naturally work steadily and in security until apprised of the approaching danger. The only precaution to be taken by the master was the giving of the notice, and unless the notice was given, there was no protection whatever. If reasonable care was exercised in giving this notice, and then, for some unforeseen reason, harm still resulted to appellee, appellant might claim to be relieved, but the giving of this notice was appellant's duty, and any neglect in giving it was appellant's neglect.''

In the case of the *Inland Steel Co.* v. *Smith* (1907), 39 Ind. App. 636, it is held that where the master puts the servant at work in a place where the servant cannot watch the operation of an appliance which necessarily makes the place dangerous, it is the master's nondelegable duty to provide sufficient means of warning to prevent injury. To the same effect is the case of *Gould Steel Co.* v. *Richards* (1903), 30 Ind. App. 348.

So, it appears that this court has alligned itself with those authorities holding that where a duty to warn of danger rests upon the master, it is a nondelegable duty, and that the master is liable for the negligence of the person whom the master has entrusted with the performance of the duty. We do not feel disposed to change the attitude of the court upon this question. No error intervened in overruling appellant's demurrer to the complaint, and its motion for judgment on the answers returned by the jury to the interrogatories.

Other questions are raised by appellant as to the instructions given and refused by the court, and as to the sufficiency of the evidence to sustain the verdict. Whatever error may have intervened in reference to the giving and refusing to give instructions we think is

rendered harmless by the answers to the interrogatories, and by the undisputed evidence in the case. The evidence is sufficient to sustain the verdict of the jury.

Judgment of the court below affirmed.