FELICE et al. v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, First Department. February 19, 1897.)

1. MASTER AND SERVANT—DANGEROUS PREMISES—DUTY TO GIVE WARNING.
    Where servants are engaged in a tunnel through which the master's railway trains are frequently passing, and each man is required to look out for his own safety, the master must give such warning of the approach of trains as will enable each man, looking out for himself, to become aware of their approach in time to avoid them.

2. SAME—INSUFFICIENT WARNING.
    Servants were digging a ditch in a tunnel through which ran the master's railroad tracks. The work was lighted only by small torches. Just after a train had passed on one track, and the tunnel was so filled with smoke and steam that it was almost impossible to distinguish objects in the light of the torches, and the tunnel was filled with the noise of the train, a light engine came down on the other track, running backward, with no light on the rear of the tender, and giving as a warning only the ringing of the bell. It was running at the speed of 15 miles an hour. The only light which could be seen on it was a small hand lantern, which hung from the top of the cab. One of the servants was struck by the engine, which was not discovered till almost upon him. *Held*, that the master only was chargeable with negligence.

3. TRIAL—MEAGER INSTRUCTIONS—WAIVER.
    The objection that the instructions are too meager is waived by a failure to request further instructions.

4. DEATH BY WRONGFUL ACT—DAMAGES.
    A verdict of $5,000 for the wrongful death of a laborer, a married man 33 years old, of temperate habits and good health, and the sole support of his family, is not excessive.

Appeal from trial term, New York county.

Action by Rosa Felice and Pietro Andreoli, administrators of Vincenzo Felice, deceased, against the New York Central & Hudson River Railroad Company, for the death of plaintiffs' intestate. From a judgment in favor of plaintiffs, and an order denying its motion for a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, and WILLIAMS, JJ.

Herbert E. Kinney, for appellant.
H. M. Heymann, for respondents.

RUMSEY, J. On the 20th day of September, 1895, Vincenzo Felice, the plaintiffs' intestate, was a laborer in the employ of the defendant, and as such was at work on what is known as the "Weehawken Tunnel," through which ran the West Shore Railroad,—a road under the control of the defendant. Felice with other men, under the charge of a foreman, was engaged in digging a ditch along the tracks through the tunnel. The place where they were at work was a long way from the entrance, so that no daylight could penetrate. The only means for artificial lighting of the tunnel were the few torches with which the men were furnished to throw light upon the ditches where they were at work. While they were digging, a train came from the south, of which they had notice, and they left their work for the purpose of getting out of the way of the cars. As that train was passing, a light engine, running backwards, came from the

north.   This engine, as it would seem, was not perceived until it was almost upon the men; and Felice, not being able to get out of the way, was struck by it and killed.   In this action, brought by his administrators for damages, a verdict was recovered, on which judgment was entered.   From that judgment, and from an order denying the motion for a new trial, this appeal is taken.

The relations between a master and servant, and the duty which the master owes to his servant, under the circumstances in which this man was engaged, are not at all in dispute.   It is the duty of the master to use reasonable care to provide for the servant, so far as the work at which he is engaged will permit, a reasonably safe and proper place in which to do his work, and to that end, if the place may become dangerous by reason of perils arising from the doing of other work pertaining to the master's business, different from that in which the particular servant is engaged, to give him such warning of the additional dangers as will enable him, in the exercise of reasonable care, to avoid them, or to guard himself against them. Pantzar v. Mining Co., 99 N. Y. 368, 2 N. E. 24; McGovern v. Railroad Co., 123 N. Y. 280, 25 N. E. 373.   Just how that duty should be performed, in any given case, cannot be determined as a matter of law. It may be that under certain circumstances the work is such, and so done, as to require the master to make rules for the conduct of the employés, so that they may be protected from the dangers which approach them.   Eastwood v. Mining Co., 86 Hun, 91, 34 N. Y. Supp. 196.   It may be that some other means may properly be employed to give the servant the warning he is entitled to, but, whatever means are employed, it is the duty of the master to employ them; and that duty cannot be delegated to any other person, but, in whatever way it may be exercised, it remains the duty of the master, and the person appointed to perform it is the alter ego of the master, for whose negligence the master is liable. Bushby v. Railroad Co., 107 N. Y. 374, 14 N. E. 407; Pantzar v. Mining Co., supra.   As to the performance of that kind of duty, the person intrusted with it, if anybody is so intrusted, is not a co-servant of another employé, but he is, for that purpose, the master, and his act and his neglect are the act and neglect of the master himself.   In this particular case it must be regarded as settled that there was nothing to require the master to make rules for the protection of the employés.   The defendant, at the end of the case, requested the court to charge that the jury were not authorized by the evidence to find that it was the duty of the defendant to make or promulgate any rule or rules requiring the use of signal flags, or any other warning signals, in or near the tunnel, for the protection of the plaintiffs' intestate.   This was charged by the court as requested by the defendant, and against the plaintiffs' exception.   So far as the defendant is concerned, therefore, this must be regarded as the settled law of this case; and we must start, in the examination of it, with the proposition that, although it was the duty of the defendant to use reasonable care to give some warning to the plaintiffs' intestate, that duty could not be performed by the making of rules.   This view of the law which the defendant procured the

court to adopt, and of which he cannot now complain, eliminates from this case any question of the duty of the master to promulgate rules. It is said that no question of that kind was submitted to the jury. It was not submitted because the defendant requested that it should not be, doubtless thinking that such a request was for its benefit; but having made the request, and that request having been granted, it will not now be heard to complain that any such question should have been submitted to the jury, nor will the verdict be set aside for the failure to submit that question to the jury, if it can stand upon any other state of facts which was properly submitted to the jury.

The question then occurs whether the verdict can be sustained upon any other theory than the failure of the duty of the defendant to lay down proper rules for the protection of its employés while at work in that tunnel. What that duty was, we have already seen. It is apparent that, if the defendant performs the duty, it is of no importance in what way it shall be performed. It is also apparent that the duty can easily be performed by the giving of proper warning of the passage of trains through the tunnel, so that the employés at work there can get out of the way of them. In the absence of rules (which in this case, it is settled, were not necessary), the defendant was called upon to use such other means of giving warning as were proper and sufficient for the purpose. The jury cannot say what means of warning should be adopted. The question for them is simply whether the means which were adopted to give warning in the particular case were sufficient for the purpose for which they were intended. Dyer v. Railway Co., 71 N. Y. 228. In this case the evidence shows that it was not the duty of any one man of those in the tunnel to look out for the safety of the rest. Each man was required to look out for himself. That being so, it was clearly the duty of the defendant to give such warning of the approach of trains as would permit each man, looking out for himself, to become aware of their approach in time to avoid them. It seems that at this time a train had just passed, going north. While the smoke and steam from the engine of that train had filled the tunnel so that it was almost impossible to distinguish objects through the dim light which was given by the torches furnished to the men, and the tunnel was filled with the noise and rattle of the train, a light engine came down upon the other track, running backwards, with no light upon the rear of the tender, and giving as a warning only the ringing of the bell. This engine was running at the rate of about 15 miles an hour. The only light which could be seen from it was a small hand lantern, with one wick, hanging from the top of the cab, 12 or 15 feet forward of the rear of the engine. Just how much notice of the approach of this engine was given by that light, in the smoke and steam of the other train, can easily be imagined. There is no pretense that any other warning than that light and the bell was given of the approach of this engine; and the jury were justified, from the evidence, in finding as a fact that the plaintiffs' intestate, and

the men immediately about him, were not aware of it until it was directly upon them. In view of that fact, they were also justified in finding that sufficient warning was not given of the approach of that engine to enable the plaintiffs' intestate to get out of its way. The question of fact was sufficiently presented to the jury. They were told that it was the duty of the defendant to furnish the deceased with a place which was reasonably safe, under the circumstances, and in view of the work which was to be done, and that that was all the duty of the employer, and in doing that he was bound to use only those precautions which men of ordinary care and prudence would use under the circumstances. While this charge was not very full, yet it is to be noticed that no request was made to enlarge it, or to give the jury any further instructions upon the duty of the defendant under the circumstances. Every request which was made in that regard by the defendant was granted, and every proposition which he asked was charged. If defendant's counsel desired any further charge as to the duty of his client in this regard, or any further explanation about it, to be given to the jury, it was his duty to ask for it; and, if he failed to ask for it, he must be deemed now to have consented that the charge was all that was necessary, under the circumstances, and he is precluded from saying that it should be any different from what it was. If counsel desire any question to be presented to the jury, and deem it for the benefit of their client, they are bound to notify the trial judge of that fact, and to give him an opportunity to decide whether or not such questions shall be presented. So, if they think that the jury have not been sufficiently instructed upon any point to protect the rights of their client, they are bound to say so at the trial; and if they lie by, and permit the case to go to the jury with insufficient instructions, without complaint, they are not at liberty to raise for the first time upon appeal questions which, if they had been presented to the trial judge, would undoubtedly have been answered satisfactorily to them by him. We cannot see, upon the whole, that the rights of the defendant were not sufficiently protected by the charge which was given to the jury; and it is quite clear that the facts warranted the conclusion which the jury reached, that there was a grave failure on the part of the defendant to use proper care to warn the plaintiffs' intestate of the approach of the engine which struck him.

We think the question of contributory negligence was properly left to the jury. It is quite true that the plaintiff's intestate knew that the defendant was in the habit of permitting its trains and engines to run down through this tunnel at comparatively high speed, and that he was bound to look out for them and avoid them. But he was supposed to know that there was imposed upon the master the duty to use all reasonable care to diminish the dangers which might arise from the running of trains through this tunnel, and he was bound only to exercise such care as would be sufficient to protect him if the defendant, on its part, had given him the warning to which he was entitled. McGovern v. Railroad Co., 123 N.

Y. 281, 25 N. E. 373; Ford v. Railroad Co., 124 N. Y. 493, 26 N. E. 1101. So far as the acts of Felice himself are concerned, there is nothing in the case which shows that he omitted any act which a reasonable man would take to avoid the dangers which surrounded him. When he received notice of the coming of the first train, he stopped his work, and at once sought a place of safety, in common with all the other men in the gang. It is a fair inference from the evidence that, when he first knew of the approach of the light en- gine upon the other track, he made some sort of an effort, in com- mon with his comrades, to avoid it. All but he succeeded. Just what means he took to avoid it can never be known, but it is known from the testimony of one of his comrades that he sought a place which that comrade supposed at the time to be a place of safety, but which he left just as the engine was upon him, leaving Felice standing where he had been. It may be that the place where Felice took refuge was not one which would enable him to avoid the light engine, but it must be remembered that all that he could do with reference to that engine had to be done after he had re- ceived notice of the approach of the engine, and he received that notice only when the engine was almost upon him. When a man is called upon to take care for his own safety in the face of an im- mediately impending peril, which is imminent, he is not expected to use the same cool judgment as if he had become aware of the danger when it was distant, and had had time to look about for means to avoid it. Under all the circumstances disclosed by this evidence, the jury might well say that the peril from this light engine was so immediately impending that, whatever means this man used to escape it, or, indeed, if he used no means whatever to escape it, he did not omit anything which any reasonably careful person would have done, in view of a like peril, under identical circumstances. What has been said is a sufficient answer to the several propositions advanced by the defendant upon the motions which were made to dismiss the complaint, and these motions need not be further considered. It cannot be said that Felice assumed the risk of the danger arising from the approach of the engine which struck him. A servant assumes such risks only as he knows are incidental to his employment. Usually those risks are such as arise by reason of the management of the master's business with due care. Unless the servant knows that proper precautions are neglected, he does not take the risk of the failure to exercise them. There is nothing in this case to show that it was the habit of the com- pany to run its trains through the tunnel without proper warning, and thus Felice did not assume any risk arising from the want of proper notice of the approach of trains. Paolo v. Hunten, 3 App. Div. 528, 38 N. Y. Supp. 356. If it had been shown that there had been a uniform failure to give notice, other considerations of public policy might arise, which need not now be discussed. Upon the whole case, we are satisfied that no error was committed to the defendant's injury on the trial of this case, and for which the judg- ment can be reversed.

It is claimed by the defendant that the damages were excessive, and that the verdict should be set aside on that ground. This accident took place in the state of New Jersey on the 20th of September, 1895. It seems from the statute, which is printed in the record, that the law of the state of New Jersey is substantially like that of the state of New York, and, at the time that this accident occurred, there was in neither place any limit in the statute to the amount of damages which the jury might render where death was the result of the negligence. It was admitted in this case that the intestate was 33 years old; that he had a wife and three children; that he was in good health and of temperate habits, and the sole support of his family; that he received $1.25 per day wages. Nothing else is shown, so far as we can learn, bearing upon the question of damages. That question is one exclusively for the jury. A verdict in one case upon that question is of very little assistance to enable either the court or the jury to fix the proper amount of the verdict in any other case. There is no actual money value of the life of a man, and the court cannot say, in any given case, that a verdict is greater than it should be, unless the amount of it is such that by no possible means of computation could it be justified. Certainly it cannot be said, as a matter of law, that the life of a man in the prime of years, and in good health, is not worth $5,000 to his widow and minor children. His yearly earnings at the time when he was killed were greater than the interest on the amount of the verdict. But that is not the only thing to be considered. Even as a pecuniary proposition, a man's life is worth something more to his family than the mere amount of money which he brings into it. While in these cases nothing can be given for the loss of society, and for mere "sentimental damages," as they may be called, yet the benefit of the counsel of the husband and father is worth something pecuniarily, even though he may be a day laborer; and it cannot be said, as a matter of law, that $5,000 is too much to compensate the family for the loss of the head of it, even if it should be supposed that, being a day laborer, he would always continue in that particular employment, and never get beyond it. As far as we can observe, the legal proposition upon which the defendant stands is that a day laborer, who is a foreigner, cannot, in any event, be worth more than $5,000 to his wife and children. To that proposition we do not accede.

Judgment and order affirmed, with costs. All concur.