WITKOWSKI v. GEORGE W. CARTER & SONS CO.

(Supreme Court, Appellate Division, Fourth Department.    April 30, 1901.)

1. NONSUIT—NEW TRIAL—MOTION HEARD IN APPELLATE DIVISION.

Where a nonsuit is entered at the trial term, and exceptions are ordered to be heard at the appellate division in the first instance on motion for a new trial, the court, on the hearing thereof, is warranted in assuming that the trial court entertained doubt as to the correctness of its rulings, and should treat all controverted facts as established in favor of plaintiff, who is also entitled to the most favorable inferences to be deduced from the evidence.

2. MASTER AND SERVANT—INJURIES TO SERVANT—BRICK FALLING FROM BUILDING—SAFE PLACE TO WORK.

Plaintiff was employed as a laborer, and required to dig a sewer trench within the space formerly occupied by a music hall, while defendant company was taking down the walls of the building.  As the bricks were taken from the walls, they were allowed to slide down a chute onto a platform erected in the center of the building.  The floors of the building had been removed, and the only covering which existed to protect the employés on the lower floors from injury by falling bricks was the platform, which did not extend up to the walls.  Plaintiff was directed by defendant to dig and wheel sand from under what had formerly been the stage of the hall, and in the afternoon of the day of the injury was requested by a fellow servant to sift sand for him, with which request plaintiff complied, and while. thus engaged he was struck on · the head by a brick falling from the wall, causing the injuries complained of. *Held*, that such facts were sufficient to present a question for the jury as to whether defendant had been negligent in not providing a proper covering for the protection of plaintiff and other workmen who were required to render services in the cellar of the building.

3. SAME.

It being a part of plaintiff's duty to wheel sand to the sand-sifter, the contention that he was not entitled to recover, because he would not have been injured had he remained at work under the stage, where he had been placed at work by the defendant, and that he was under no obligation to sift sand at the request of the mortarman, could not be sustained; one of the members of defendant corporation being present, and making no objection to his doing the work requested.

4. SAME—ASSUMPTION OF RISK.

Where plaintiff was injured by material falling from the walls of a building, while he was engaged in excavating sand from the interior, and it appeared that he had seen no bricks or material falling from the wall prior to the injury, while there was evidence that defendant's attention had been called to the fact that the place where plaintiff was injured was dangerous, which danger could have been obviated by extending the temporary flooring nearer to the walls of the building, the question whether plaintiff assumed the risk of such injury was for the jury.

Action by Valentine Witkowski against the George W. Carter & Sons Company.  A nonsuit was entered at the close of plaintiff's case, and plaintiff's motion for a new trial on the exceptions was ordered to be heard in the appellate division in the first instance.  Exceptions sustained, and motion granted.

The defendant, a domestic corporation, was engaged in reconstructing a building in the city of Buffalo, known as "Music Hall," and on the 16th day of November, 1899, the plaintiff, who was a day laborer in the employ of the defendant, was, while in the performance of his duty in the cellar of the building, injured by the falling of a brick.  It appears that there was a plat-

form or scaffolding about 40 feet square in the center of the building, the top of which was reached by means of an elevator or hoist. There were also beams and joists which crossed the building at intervals, but, with these exceptions, the interior of the building, from the cellar up, was entirely open. On the 16th day of November, and for some days prior thereto, workmen were engaged in taking down the brick walls of the building, which were originally about 70 or 80 feet in height, and, to facilitate this work, a chute some 15 feet in length, and about 3 feet in width, had been so constructed that the bricks, as fast as they were loosened and taken from the walls, were placed in the chute, and made to slide therein down on to the platform. The plaintiff entered the defendant's service about the 1st of November, and for eight days was engaged in digging a sewer. On the morning of the 16th he was directed by one of the members of the defendant corporation to dig sand under what was formerly the stage of the Music Hall, and this sand he carted in a wheel barrow to a sand-sifter, which stood at a point about 80 feet distant. In the afternoon of that day a co-servant, who was engaged in mixing mortar at the mortar box close by the sand-sifter, requested the plaintiff to sift some sand for him. With this request the plaintiff complied, and while thus engaged a brick fell, and struck him upon the head, causing quite serious injuries. It is to recover for such injuries that this action is brought. Upon the trial, at the Erie trial term, in October, 1900, a nonsuit was directed at the close of the plaintiff's case, and the exceptions were thereupon ordered to be heard by this court in the first instance.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

Frank E. Wade, for plaintiff.
C. M. Bushnell, for defendant.

ADAMS, P. J. In entering upon a review of this case, it is proper that due consideration should be given to two important circumstances,—one of which is that the plaintiff was nonsuited at the trial term, and the other is that the exceptions were ordered here in the first instance. The first of these circumstances requires this court to treat all controverted facts as established in favor of the plaintiff, who is likewise entitled to the most favorable inferences to be deduced from the evidence (Higgins v. Eagleton, 155 N. Y. 466, 50 N. E. 287); while the second warrants the assumption that the trial court entertained some doubt as to the correctness of its rulings (Wall v. Jones [Sup.] 18 N. Y. Supp. 674). The learned trial justice, in granting the defendant's motion for a nonsuit, stated that, in his view of the case, the evidence failed to establish any negligence upon the part of the defendant, and that the risk of injury from falling bricks was one which the plaintiff assumed when he entered the defendant's service. After a careful and critical examination of the facts of this case, in the light of the first of the rules to which reference has just been made, we find ourselves unable to yield assent to either of these propositions, but, on the contrary, we think that as to each of them a question of fact was presented which should have been submitted to the jury. The law is now too well settled in this state to require the citation of authorities in support of the proposition that, as between master and servant, the former is bound to exercise a proper degree of care in providing a reasonably safe place in which the latter may perform the duties required of him. Can it be said that such provision was made in the present instance?

It was made to appear beyond all question that the taking down of the walls of the building in question was attended with more or less danger to such employés as were at work on the lower floors. One witness testified that pieces of brick and other material occasionally fell where he was at work at the mortar box, in consequence of which he complained to William H. Carter, one of the members of the defendant corporation, only a day or two before the accident, and asked to be put in a safer place. Another said that on the forenoon of the day the plaintiff was injured he saw a part of a brick fall, and that prior to that he had seen bricks fall on at least one or two occasions. Indeed, from the very nature of the business in which the defendant was engaged, it would have been quite remarkable if more or less bricks and other material had not fallen in the course of their removal from the walls, and that it was a falling brick which struck and injured the plaintiff is positively asserted by a co-employé who witnessed the occurrence. This being the situation, what, if any, protection was provided for such of the defendant's employés as were required to work in the cellar or on the ground floor?

It was not shown that the platform of flooring placed in the center of the building covered the entire space or extended up to the walls. One of the plaintiff's witnesses, it is true, testified that the mortar box was so located that when he looked up he saw the platform or scaffolding over him; but the plaintiff stated in the most positive manner that when he was at work sifting sand he could look up and see the sky, and that "there was no covering there at all." In this he was corroborated by the witness Polanowski, and also to a certain extent by the undisputed fact that bricks did fall where these men were at work. In these circumstances, we fail to see why the case is not in all its circumstances, as thus far detailed, signally parallel to that of Ford v. Lyons, 41 Hun, 512, where it was held that there was evidence from which it could reasonably be concluded that the defendant had been negligent in not providing a proper covering for the protection of his men who were required to render services in the cellar of the building which was in process of construction.

But, it is insisted, the plaintiff would not have been injured had he remained at work under the stage, where he was placed by the defendant, and this, it is further argued, furnishes a distinguishing feature, which relieves the case from the rule laid down in Ford v. Lyons. This contention certainly possesses the merit of ingenuity, but it is not entirely convincing. It seems that it was a part of the plaintiff's duty to wheel the sand he was digging over to the sand-sifter, and while, strictly speaking, he was possibly under no obligation to sift the sand at the request of the mortarman, we are not prepared to say that his doing so relieved the defendant from the responsibility of furnishing him a reasonably safe place in which to do that work, especially as it appears that while thus engaged one of the members of the defendant corporation was present, and, so far as the evidence discloses, raised no objection. It is not to be denied that there are several cases cited upon the defendant's brief which, at first glance, appear to be in conflict with Ford v. Lyons, and those to which our attention is more particularly directed are Wall v. Jones, supra,

and Van Orden v. Acken, 28 App. Div. 160, 50 N. Y. Supp. 843. In. the former case the decision sustaining the direction of a verdict for the defendant was placed upon the ground that there was absolutely no evidence to show that the falling of the brick which caused the death of the plaintiff's intestate was the result of any negligence up on the part of the defendant, and for this reason it was thought by the court unnecessary "to discuss the question as to whether, under any circumstances, the plaintiff could recover"; while, in the latter case, it was made to appear that ample planking or covering had been provided for the protection of laborers at work upon the lower floor, and that the brick which caused the injury complained of fell through a well hole in the flooring, which was left open for the accommodation of a ladder, by means of which workmen were enabled to pass from one floor to another. The case consequently presented "simply the feature of the fall of the brick and the injury to the plaintiff, without any further evidence that would indicate negligence upon the part of the defendant."

Manifestly, therefore, the apparent conflict between these several decisions is due, not so much to the adoption of opposing principles, as to the application of one general principle to differing facts; and when we recall the rule, which has been so repeatedly affirmed in negligence actions, that each case must necessarily depend upon its own peculiar facts, the difficulty which might otherwise attend any attempt to reconcile decisions which appear to be antagonistic to each other is in a large measure removed. As already intimated, the case of Ford v. Lyons is so similar in all its distinctive features to the one now under review that we do not feel inclined to disregard its authoritative force so far as the question of the defendant's negligence is concerned.

As regards the question of assumed risk, but little need be said. A servant ordinarily assumes only such risks as are obviously incidental to the business in which he is engaged, and even as to these it is the duty of the master to protect his servant in all cases where danger can be avoided or mitigated by the exercise of reasonable care. McGovern v. Railroad Co., 123 N. Y. 280, 25 N. E. 373; Ford v. Railway Co., 124 N. Y. 493, 26 N. E. 1101, 12 L. R. A. 454; Felice v. Railroad Co., 14 App. Div. 345, 43 N. Y. Supp. 922. In the present case the plaintiff testified that he had seen no bricks or other material falling from the upper walls prior to the time when he received his injury, while, upon the other hand, there was evidence tending to show that the defendant's attention was expressly called to the fact that the place where the mortar box and sand-sifter were located was a dangerous one, presumably from this very cause, and it is contended that this danger could have been obviated by extending the temporary flooring nearer to the walls of the building. Whether, therefore, under the circumstances of this case, it was the duty of the master to make such provision, or whether the plaintiff, with knowledge that the defendant had neglected to take proper precautions to protect him from just such an accident as the one of which he complains, saw fit to remain in its service, were questions which, within the rule applicable to the doctrine of assumed risks, ought, in our opinion, to

have been submitted to the jury. We conclude, therefore, that, as
the evidence stood at the close of the plaintiff's case, it was error to
grant a nonsuit, and it consequently follows that a new trial should
be granted.

Exceptions sustained, and motion for a new trial granted, with
costs to the plaintiff to abide event. All concur.