(July 30, 1921.)

ROBERT W. WILSON, Respondent, v. ST. JOE BOOM COMPANY, LTD., a Corporation, Appellant.

[200 Pac. 884.]

EXAMINATION OF JURORS ON OIR DIRE—STATEMENT OF VICE-PRINCIPAL AFTER PERSONAL INJURY — WHEN ADMISSIBLE — MASTER CANNOT DELEGATE DUTY TO FURNISH SAFE PLACE AND APPLIANCES FOR SERVANT TO WORK — WHEN JUDGMENT FOR PERSONAL INJURIES NOT EXCESSIVE.

1.   In a suit for personal injuries, evidence that the defendant carries casualty insurance is incompetent and immaterial; but counsel for plaintiff may be permitted on the *voir dire* examination to ascertain whether the jurors have any interest in the result of the litigation, although this may show such juror's connection with a casualty company, so long as the privilege is not abused or used as a subterfuge to communicate improper matter to the jurors.

2.   In an action for personal injuries, a statement of fact by a vice-principal, that he had forgotten to warn the person injured of the dangerous character of his position, which resulted in the injury, made under such circumstances and so near the time of the injury as to be a part of the *res gestae,* is admissible.

3.   Where the construction and manner of operating a tug-

Publisher's Note.

3. On the question of applicability of rule *res ipsa loquitur* as between master and servant, see notes in Ann. Cas. 1914D, 94; Ann. Cas. 1915C, 515; Ann. Cas. 1916D, 752; 6 L. R. A., N. S., 337; 16 L. R. A., N. S., 214; L. R. A. 1917E, 4.

boat propelled by steam are such that the master must be presumed to know that it creates a latent danger to the employees or members of the crew engaged in its operation, after one employee has been injured by reason of such faulty construction or negligent manner of operating said boat, a statement of the captain that he had forgotten to warn the person injured of such danger is competent evidence in an action against the master, as the statement of a vice-principal made within the scope of his authority.

4. A motion for a nonsuit or directed verdict, on the ground of assumed risk, contributory negligence, or that the injury was caused by the act of a fellow-servant, is properly denied where it is shown that a steam tug is so constructed that the exhaust-pipe from the injector opens flush with the side of the boat, just under the guard, so that it is not readily observable, and plaintiff is injured, while in the discharge of his duty, by a scalding jet of steam turned on by the fireman.

5. Under such circumstances, the master cannot delegate his duty to provide the servant a safe place and safe appliances with which to work; the act of the fireman causing such injury is not the act of a fellow-servant, but of a vice-principal.

6. A verdict of $1,250 *held* not excessive where it is shown that respondent was scalded so that the bone of the leg was laid bare, that he was confined to the hospital for two weeks, and had not fully recovered at the time of the trial a year later, and that such injury had interfered with his earning capacity as a laboring man.

APPEAL from the District Court of the Eighth Judicial District, for Kootenai County. Hon. John M. Flynn, Judge.

Action for personal injuries. Verdict and judgment for plaintiff, and defendant appeals. *Affirmed.*

Ralph S. Nelson, for Appellant.

The fact that a defendant was insured by a casualty company against injury of any kind of its employees is an immaterial matter and ought not to be permitted to go to the jury, and counsel ought not to be permitted to introduce any such evidence, for it is well recognized that it is only done for one purpose, and that is to prejudice the jury. (*Steve v. Bonners Ferry Lumber Co.*, 13 Ida. 384, 92 Pac. 363;

*Iverson v. McDonnell,* 36 Wash. 73, 78 Pac. 202; *Cameron v. Pacific Lime etc. Co.,* 73 Or. 510, Ann. Cas. 1916E, 769, 144 Pac. 446; *Putnam v. Pacific Monthly Co.,* 68 Or. 36, Ann. Cas. 1915C, 256, 130 Pac. 986, 136 Pac. 835, 45 L. R. A., N. S., 338.)

"In an action for injuries to a servant, a statement made by plaintiff's foreman to a witness as to the cause of the accident, which was not a part of the *res gestae,* was inad·missible against the master as a statement against interest, although the foreman stood in the relation of a vice-principal." (*The Maurice,* 135 Fed. 516, 68 C. C. A. 228; *Lee v. St. Louis, M. & S. E. R. Co.,* 112 Mo. App. 372, 87 S. W. 12; *Richstain v. Washington Mills Co.,* 157 Mass. 538, 32 N. E. 908; *Walker v. O'Connell,* 59 Kan. 306, 52 Pac. 894; *Baier v. Selke,* 211 Ill. 512, 103 Am. St. 208, 71 N. E. 1074; *Kamp v. Coxe Bros. & Co.,* 122 Wis. 206, 99 N. W. 366.)

While the employer can be held for the failure to furnish a reasonably safe place, it cannot be held for negligence in the operation of such a place or machinery. (*Wiesner v. Bonners Ferry Lumber Co.,* 29 Ida. 526, 160 Pac. 647, L. R. A. 1917C, 328; *Larsen v. Le Doux,* 11 Ida. 49, 81 Pac. 600; *St. Louis, I. M. & S. R. Co. v. Needham,* 63 Fed. 107, 11 C. C. A. 56, 25 L. R. A. 833; 4 Labatt on Master and Servant, sec. 1520; 18 R. C. L., sec. 209; *Wood v. Potlatch Lumber Co.,* 213 Fed. 591, 130 C. C. A. 171.)

"If it was an act pertaining only to the duty of an operative under such employment, the employee performing such act is a fellow-servant of his coemployee whatever his rank or grade may be, and in the latter case the master is not liable for an injury caused by the negligence of such employee." (*Coulston v. Dover Lumber Co.,* 28 Ida. 390, 154 Pac. 636; *Millett v. Puget Sound Iron & Steel Works,* 37 Wash. 438, 79 Pac. 980.)

The fireman was a fellow-servant of the plaintiff, both under the rule as determined in Idaho as well as under the decisions of other states. (*The Queen,* 40 Fed. 694; *The Victoria,* 13 Fed. 43; *The Ravensdale,* 63 Fed. 624; *Grimsley*

*v. Hankins,* 46 Fed. 400; *Red River Line v. Cheatham,* 60 Fed. 517, 9 C. C. A. 124; *Hollis v. Widener,* 228 Pa. 466, 139 Am. St. 1010, 21 Ann. Cas. 108, 77 Atl. 819; *Moore v. Curran,* 198 Mass. 60, 84 N. E. 113; *Bergstrom v. Staples,* 82 Mich. 654, 46 N. W. 1035.)

Jas. F. Ailshie and Wm. H. Bonneville, for Respondent.

Where an employer sets a servant to work at a place which may or will become dangerous at irregular periods and gives him no warning of the danger generally or of its approach, the employer will be held liable for an injury that results to the servant, and that duty cannot be delegated so as to avoid liability. (*Illinois Steel Co. v. Ziemkowski,* 220 Ill. 324, 77 N. E. 190, 4 L. R. A., N. S., 1161; *Fill v. Cunard S. S. Co., supra; The Chicago, supra; Felice v. Central & Hudson R. Co.,* 14 App. Div. 345, 43 N. Y. Supp. 922.)

While obeying orders of the captain of the boat, a lineman in making fast the boat at a landing has a right to assume that the boat will not eject hot steam on to him and injure him, and it is gross negligence of the master if such a thing is done. (*Fill v. Cunard S. S. Co.,* 217 Fed. 84; *The Chicago,* 156 Fed. 374.)

Counsel for plaintiff in a personal injury action have an undoubted right to examine the jurors on their *voir dire* examination to ascertain whether they are associated with or working for any casualty insurance company or its attorney, where he has any reason to believe a casualty company is carrying insurance on the defendant company. (*New Aetna Portland Cement Co. v. Hatt,* 231 Fed. 611, 145 C. C. A. 497; *Spoonick v. Backus-Brooks Co.,* 89 Minn. 354, 94 N. W. 1079; *Goff v. Kokomo Brass Works,* 43 Ind. App. 642, 88 N. E. 312; *Putnam v. Pacific Monthly Co.,* 68 Or. 36, Ann. Cas. 1915C, 256, 130 Pac. 986, 136 Pac. 835, 45 L. R. A., N. S., 338, L. R. A. 1915F, 782; *Parkdale Fuel Co. v. Taylor,* 26 Colo. App. 304, 144 Pac. 1138; *Vindicator Consol. Gold Min. Co. v. Firstbrook,* 36 Colo.

498, 10 Ann. Cas. 1108, 86 Pac. 313; *Saller v. Friedman Bros. Shoe Co.,* 130 Mo. App. 712, 109 S. W. 794; *Swift & Co. v. Platte,* 68 Kan. 1, 72 Pac. 271, 74 Pac. 635; *Dow Wire Works Co. v. Morgan* (Ky.), 96 S. W. 530; *M. O'Connor & Co. v. Gillaspy,* 170 Ind. 428, 83 N. E. 738; *Iroquois Furnace Co. v. McCrea,* 191 Ill. 340, 61 N. E. 79; *Hoyt v. Independent Asphalt Paving Co.,* 52 Wash. 672, 101 Pac. 367; *Cripple Creek Min. Co. v. Brabant,* 37 Colo. 423, 87 Pac. 794; *Swift & Co. v. Platte,* 68 Kan. 1, 72 Pac. 271, 74 Pac. 635.)

Time is not necessarily a controlling element or principle in the matter of *res gestae.* A remark or statement of fact within the personal knowledge of the party making it (and not the mere expression of opinion or judgment), which was called forth by the accident and is voluntary and spontaneous and made at the time or shortly after the occurrence, is part of the *res gestae.* (*Coffin v. Bradbury,* 3 Ida. 770, 95 Am. St. 37, 35 Pac. 715; *State v. McGann,* 8 Ida. 40, 66 Pac. 823; *Anderson v. Great Northern Ry. Co.,* 15 Ida. 513, 99 Pac. 91; *New York etc. Mining Syndicate & Co. v. Rogers,* 11 Colo. 6, 7 Am. St. 198, 16 Pac. 719; *Johnson v. State,* 8 Wyo. 494, 58 Pac. 761; *Augusta Factory v. Barnes,* 72 Ga. 217, 53 Am. Rep. 838; 4 Chamberlayne's Modern Law of Evidence, p. 4412; *City of Chicago v. Jarvis,* 226 Ill. 614, 80 N. E. 1079; *Spaulding v. Forbes Lithograph Mfg. Co.,* 171 Mass. 271, 68 Am. St. 424, 50 N. E. 543; *Donovan v. Chase-Shawmut,* 201 Mass. 357, 87 N. E. 580; *Galvin v. Brown & McCabe,* 53 Or. 598, 101 Pac. 671; *Missouri Pac. Ry. Co. v. Neiswanger,* 41 Kan. 621, 13 Am. St. 304, 21 Pac. 582.)

LEE, J.—This was an action brought by respondent to recover $2,500 damages for personal injuries alleged to have been caused by reason of the negligence of appellant corporation in not furnishing and maintaining a reasonably safe place for respondent to work, and for failure to use reasonable care and precaution for his safety, whereby he was scalded by a jet of steam while in the performance of his duty and working under the direction and instruction of the master.

It is alleged that appellant owned, maintained and operated a tug-boat, propelled by steam, upon Coeur d'Alene Lake and St. Joe and Coeur d'Alene Rivers, in Kootenai and Benewah counties, for the transportation of logs and timber products by floating and towing on said lake and rivers and their tributaries, and for the sorting and towing of logs and timber products to various points along the shore; that in the course of carrying on said business it maintained docks, booms, brails and other contrivances at a place commonly known as the "sorting gap" at the mouth of the St. Joe River; that for a short time prior to the injury complained of respondent had been in the employ of appellant as lineman, on and about the steam tug "St. Joe," his duty being to assist in making landings and performing such other duties as the captain of said tug might direct; and that on September 6, 1917, the time of the injury complained of, while said steamer was making a landing at said "sorting gap," respondent was ordered by its captain, Ed Lafferty, to fasten the cables of said boat to the piling in making fast said boat. While engaged in the performance of such duty, acting in obedience to the captain's order, and in the exercise of due care and caution, without negligence on his part, a large volume of steam was ejected from the exhaust-pipe on the side of the steamer tug, adjacent and directly opposite the place where respondent was engaged in making fast the cable to the piling, in such volume and with such force that it scalded, burned and injured his left leg so that the flesh slipped therefrom and the bone was exposed, from which injury he has suffered great pain, and will continue to suffer for a long time; and that he was disabled from performing any work for a period of two weeks, and at the time of bringing this action in December following, the performance of labor caused him great suffering and pain. The exhaust-pipe, from which this steam was ejected at irregular intervals, was flush with the side of the boat, about six inches below the guard, the opening not projecting beyond the side of

the boat, so that it could not be readily observed; it was at about the right height to strike a person standing where respondent was required to be while fastening the cable.

The answer specifically denies the material allegations of the complaint, and alleges as an affirmative defense that the injury complained of was the result of respondent's carelessness, negligence and fault; that respondent in entering such employment assumed all the risks and hazards of the same, and that this was one of the ordinary risks and hazards of such employment; and further, that if such injury was not brought about by respondent's carelessness, it was caused by the negligence and carelessness of a fellow-servant.

The cause was tried to the court sitting with a jury, which returned a verdict for the respondent in the sum of $1,250, and judgment was entered thereon, from which this appeal is taken.

At the close of respondent's evidence, appellant moved for a nonsuit, on the ground, among others, that the evidence failed to show that the boat was not constructed in the usual and customary manner; that no negligence on the part of appellant in the construction of the exhaust-pipe or failure to keep the same in proper condition had been shown; that there was no evidence to show that the exhaust-pipe and boiler were constructed in an improper manner; and that it was shown by the evidence that the injuries complained of, if any, were caused by the negligence of a fellow-servant in opening the injector when the respondent was opposite the exhaust-pipe and in dangerous proximity to the escaping steam. The court denied the motion, but held that the respondent had failed to prove any negligence in the construction of the exhaust-pipe, but that there was sufficient evidence to submit to the jury with reference to the negligent manner of operating the boat and in discharging steam from this exhaust-pipe, on the theory that respondent was entitled to be provided with a safe place in which to work.

Appellant thereupon offered its evidence, and at the close moved for an instructed verdict, relying on the ground that no negligence had been shown on the part of appellant, and that the injury, if any, was caused by the fireman opening the injector, and he being a fellow-servant with respondent, it was not liable. The court denied this motion, and instructed the jury that:

"It was the duty of the defendant company to provide and maintain a reasonably safe place for its employee, the plaintiff, to work, and this duty is one that could not be shifted or delegated to another. . . . . If you believe that it did not furnish plaintiff a safe place at which to work and that he received his injury on that account, you will find for the plaintiff, etc."

Appellant makes numerous assignments of error, the first of which we will consider, relating to alleged irregularities in the proceedings based upon the examination of certain jurors upon their *voir dire.* Appellant complains that respondent's counsel should not have been allowed to ask certain of the jurors questions that were intended to elicit from them information as to their relation with surety companies or casualty insurance, and whether or not in such connection they had ever had any business transactions with appellant's counsel. In support of its contention appellant cites the following cases: *Iverson v. McDonald,* 36 Wash. 73, 78 Pac. 202; *Cameron v. Pacific Lime Co.,* 73 Or. 510, Ann. Cas. 1916E, 769, 144 Pac. 446; *Putnam v. Pacific Monthly Co.,* 68 Or. 36, Ann. Cas. 1915C, 256, 136 Pac. 835, 45 L. R. A., N. S., 338, L. R. A. 1915F, 782; and also refers to a *dictum* of this court in *Steve v. Bonners Ferry Lumber Co.,* 13 Ida. 384, 92 Pac. 363, wherein it is said that the fact that a defendant is insured in a casualty company is immaterial and ought not to go to a jury, and adds that counsel are permitted to ascertain whether a witness under examination is a stockholder in a casualty company and interested in the result of the suit, for the purpose of affecting his credibility. Under the facts of some of the

cases cited it is held that the attempt to show that the defendant is insured in a casualty company was reversible error. In *Putnam v. Pacific Monthly Co., supra,* it is said that under a statute making the interest of a juror in the result of an action ground for challenge for implied bias, a juror who is a stockholder or interested in a casualty company is subject to challenge on that ground, and that a prospective juror occupying such a position may be interrogated as to such interest, but that this does not give the challenging party the right to abuse such privilege. This case gives the authorities for and against the holding that questions of this character on the *voir dire* examination may be reversible error, and concludes that between these two extreme positions the rule is correctly given in *Faber v. Reiss Coal Co.,* 124 Wis. 554, 102 N. W. 1049, where it is said that parties have a legal right to ascertain whether or not jurors have a pecuniary interest in the litigation, and that the exercise of this right necessarily authorizes them to elicit information on the subject, but does not give counsel a license to communicate improper matter to the jurors, or to the court in their hearing, in connection with such inquiry.

We approve this as a correct statement of the law, and think that the line of demarcation between prejudicial and nonprejudicial questions and remarks in the examination of jurors must depend upon the particular circumstances of the case. Some latitude must be given in the matter of examining jurors on their *voir dire,* to enable counsel to determine whether or not such jurors should be challenged for implied bias, and also for obtaining information as to whether or not it is desirable to exercise a peremptory challenge; and so long as counsel do not abuse the privilege and attempt under such license to communicate improper matter to the jurors, or needlessly delay the proceedings by pursuing a frivolous examination, it is not reversible error. In the case at bar, respondent's counsel interrogated two of the jurors along this line of inquiry, and we think restricted the examination to such questions as were reasonably neces-

sary to enable him to determine what connection, if any, such jurors had with this class of insurance, and whether or not they were interested in this kind of business with appellant's counsel.

Appellant's second assignment is predicated upon the court, over objection, permitting respondent to state what the captain of the boat said to him shortly after he was injured, on the ground that it was a part of the *res gestae.* After having described how he received the injury, he testified as follows:

"Q. What did you do after you discovered how it was burned there, what was done?

"A. Mr. Lafferty sent me up to the bookkeeper—I forget his name, I don't know the gentleman's name.

"Q. Well, go ahead and tell what was done.

"A. And he dressed my leg, and I went and got on the boat again and went over to wood up, and my leg was so painful I told Mr. Lafferty to put me back and I would go down on the 'Flyer,' down on the boat. He says, 'You better stay, I will take you down, we are going down and save your fare,' or something to that effect, and I told him I could not."

Later, in referring to what the captain said, the testimony is as follows:

"Q. What, if anything did Mr. Lafferty say, the captain, with reference to the occurrence, did he say anything?

"Mr. Nelson: We object to that as incompetent, irrelevant and immaterial, not within the issues in this case.

"The Court: I do not think it is admissible except as a part of the *res gestae*—it may be.

"Mr. Ailshie: Q. Did Mr. Lafferty say there at the time, or just about the time of this occurrence—

"A. Yes, sir.

"Q. Did he say anything to you about it?

"(Same objection.)

"The Court: I will sustain the objection until you show—unless you show that it is a part of the *res gestae,* the statement.

"Mr. Ailshie: Q. I will ask the witness one question: How soon was this conversation after the—

"A. When we went down to wood up—with Mr. Lafferty?

"Q. Yes?

"A. Right after we went down to wood the boat.

"Q. Right after your leg was dressed?

"Mr. Nelson: We object to that as leading.

"The Court: It is leading; sustain the objection.

"Mr. Ailshie: Q. About how soon was it after the accident?

"A. That Mr. Lafferty spoke about the leg?

"Q. Yes.

"A. About an hour or half an hour, as near as I can judge, just while running across where the wood was, across the lake on the opposite side.

"(Objection overruled—exception.)

"Mr. Ailshie: Q. Go ahead and answer the question, Mr. Wilson.

"A. Mr. Lafferty says to me, he says, 'Damn it, I forgot to tell you about that; I always warn them when the men come on here; I got burned there myself once.' "

Appellant's counsel cite many authorities in support of the general rule, and there can be no doubt of its soundness, that in an action for personal injuries to a servant, an expression of opinion relating to how the accident happened or how it might have been avoided, or an admission that it had been caused by some failure on the part of the principal to perform a duty enjoined upon him by law, is not admissible except as a part of the *res gestae*. As stated in *Silveira v. Iversen,* 128 Cal. 187, 60 Pac. 687:

"It was not a spontaneous remark made *dum fervet opus,* and a part of the occurrence, but a judgment pronounced after the event. Nor was it a remark made by a servant or agent within the scope of his employment. The master of the vessel had no authority to make an admission of culpability for the owners of the ship after the event."

Perhaps no rule of evidence is more difficult of correct application than that appertaining to spontaneous remarks

or exclamations, otherwise termed *res gestae.* Wigmore on Evidence, sec. 1745, says:

"The exposition of this exception is to be approached with a feeling akin to despair. There has been such a confounding of ideas and such a profuse and indiscriminate use of the shibboleth *'res gestae'* that it is perhaps impossible to disentangle the real basis of the principle involved."

This learned author states the basic requirements to be, first, a startling occasion, such as a shock, startling enough to render the statement spontaneous; second, a statement made before time to fabricate; and third, a statement which relates to the circumstances of the occurrence.

With regard to time, he states that there can be no definite, fixed limit, and that each case must depend upon its own circumstances. (Wigmore, sec. 1750 et seq.) In *Jack v. Mutual R. F. Life Assn.,* 113 Fed. 49, 51 C. C. A. 36, it is said that the transaction in question might be such that the *res gestae* would extend over a very considerable period of time, and still be within the rule, the essential element being that it must be a spontaneous exclamation, made "while the transaction is fresh," or, as sometimes stated, "in the heat of action." (Anderson's Law Dictionary, p. 386.) Or as Greenleaf states the rule in his work on Evidence, sec. 113:

"Where the acts of the agent will bind the principal, there his representations, declarations and admissions, respecting the subject matter, will also bind him, if made at the same time, and constituting a part of the *res gestae.* . . . . The party's own admission, whenever made, may be given in evidence against him; but the admission or declaration of his agent binds him only when made during the continuance of the agency in regard to a transaction then depending *et dum fervet opus.* . . . . "

We think the facts and circumstances under which the captain of this boat made this statement bring it fairly within the requirements of the rule and authorities as cited in Wigmore on Evidence, secs. 1745–1765, and in so holding

we do not intend to depart from or extend the rule as announced in *Erickson v. Edward Rutledge Timber Co.,* 33 Ida. 179, 191 Pac. 212. See, also, *Anderson v. Great Northern Ry. Co.,* 15 Ida. 513, 99 Pac. 91; *New York & Colo. Mining Syndicate & Co. v. Rogers,* 11 Colo. 6, 7 Am. St. 198, 16 Pac. 719; *Johnson v. State,* 8 Wyo. 494, 58 Pac. 761. Statements of this character by agents entrusted with important duties with respect to machinery or in control of railway trains have been received in evidence when made under such circumstances as would indicate that they are entitled to credit. (*Hyvonen v. Hector Iron Co.,* 103 Minn. 331, 123 Am. St. 332, 115 N. W. 167; *Anderson v. Great Northern Ry. Co., supra.*)

The captain of this boat was making a statement of what purported to be facts within his own knowledge, and there is no contention that the statement thus made was not true. He was appellant's agent in charge of the boat; his remarks were called forth by the happening of this injury, and were uttered while giving respondent advice and instruction with reference to respondent's return to his home shortly after it had occurred; he was acting directly in the line of his duty, and for the time being stood in the place of his principal. (*New York & Colo. Mining Syndicate & Co. v. Rogers, supra.*)

As more fully considered hereafter, the law is well settled that the owners of vessels owe a personal duty to those engaged in working about such boats, to provide reasonable safeguards and protection against injuries, and to warn such servants of any latent danger caused by the vessel or those in charge of her navigation. The conditions relating to the construction of this boat and the manner of operating it were such that the appellant and those in charge of the boat must be presumed to have knowledge of these perils to which respondent was exposed while acting in the discharge of his duty. There is no claim that respondent had been warned of this danger, or that by the exercise of reasonable care on his part he could have avoided the

injury in question. We therefore conclude, and so hold, that under the facts and circumstances shown the admission of this testimony, entirely aside from its being a part of the *res gestae,* could not be prejudicial error.

The remaining assignments are based upon the denial of appellant's motion for a nonsuit and for a directed verdict. It contends that the court having taken from the jury the question of this tug-boat being improperly constructed, because of insufficient evidence to show a faulty construction, it necessarily follows that appellant having furnished respondent a safe place and safe appliances with which to work, his injuries were either due to his own negligence and carelessness or to the negligence and carelessness of a fellow-servant, and that he assumed the risk of such employment, and therefore cannot be permitted to recover in this action. Appellant cites many authorities, but we do not think them applicable to the uncontroverted facts of this case.

The common-law doctrine of fellow-servant has been frequently defined and held to apply to a given state of facts by this court. In *Larsen v. Le Doux,* 11 Ida. 49, 81 Pac. 600, there is an extensive review of the authorities, and the rule announced by McKinney on Fellow-servants, sec. 43, Bailey on Masters' Liability for Injuries to Servants, 226 et seq., and Wood on Master and Servant, sec. 438, is approved as follows:

"The true test in all cases by which it may be determined whether the negligent act causing the injury is chargeable to the master, or is the act of a coservant, is: Was the offending employee in the performance of the master's duty, or charged therewith, in reference to the particular act causing the injury? If he was, his negligence is that of the master and liability follows; if not, he was a mere coservant, engaged in a common employment with the injured servant, 'without reference to his grade or rank, or his right to employ or discharge men, or his control over them. In short, the master is liable for the negligence of an employee

who represents him in the discharge of his personal duties toward his servants.''

In *Brayman v. Russell & Pugh Lumber Co.*, 31 Ida. 140, 169 Pac. 932, the rule laid down in *Chicago City Ry. Co. v. Leach*, 208 Ill. 198, 100 Am. St. 216, 70 N. E. 222, is approved as follows:

"Those are fellow-servants who are co-operating, at the time of an injury, in the particular business in hand, or whose duties are of such a nature to bring them into habitual association or into such relations that they can exercise an influence upon each other promotive of proper caution."

In the first case the injuries were caused by the negligence of a fellow-workman in constructing a scaffold to hold mortar and bricks, under the direction of a foreman. The court held that the workmen were fellow-servants with plaintiff, and that he could not recover.

In the last-mentioned case, the plaintiff was employed as a teamster in hauling logs, and his injuries were caused by the sawyers felling trees in such a negligent manner that one of them fell upon him and he was injured. The court held that the question of whether or not plaintiff was a fellow-servant with the sawyers who were working in the immediate vicinity was properly submitted to the jury, and he was permitted to recover.

It must be admitted that the line of demarcation between cases where the fellow-servant rule is applied so as to defeat a recovery, and where it is held not to apply and recovery is allowed, is often vague and unsatisfactory, and that while the courts quite generally agree upon the general rule for determining the question of who are fellow-servants, there is a wide disparity and great conflict in the different jurisdictions as to its application.

We think, however, that under all of the authorities the fellow-servant rule has no application to the facts and circumstances of this case. It is not controverted that respondent was injured by the wrongful act of the fireman in

opening the injector and turning a scalding blast of steam upon him, while he was acting in the discharge of his duty under the direction of the captain of the boat; that the performance of this duty required him to be in close proximity to the discharge of this exhaust-pipe, which was used only at irregular intervals, and was situate so that the outlet was flush with the side of the boat under the guard, where it could not be readily observed; and that respondent had no knowledge of this danger, and would not in the exercise of ordinary care have observed the same.

We think that the doctrine of *res ipsa loquitur,* which literally means "the transaction speaks for itself," and is merely a way of saying that the circumstances attendant upon an accident are of themselves of such a character as to justify a jury in inferring negligence as the cause of the accident, is applicable where an injury arises from some condition or thing that is in its very nature so obviously destructive to person or property, and is so tortious in its quality, as to permit of no inference save that of negligence on the part of the person in control of the injurious agency. (7 Words & Phrases, 6136; *Benedick v. Potts*, 88 Md. 52, 40 Atl. 1067, 41 L. R. A. 478; *Griffen v. Manice*, 166 N. Y. 188, 82 Am. St. 630, 59 N. E. 925, 52 L. R. A. 922; Bouvier's Law Dictionary, vol. 3, p. 2908; and note in L. R. A. 1917E, 4.)

In *Felice v. New York Cent. & H. R. R. Co.,* 14 App. Div. 345, 43 N. Y. Supp. 922, in a case where plaintiff's intestate was killed by one of the defendant company's locomotives, while employed as a laborer in a tunnel, the court said:

"It is the duty of the master to use reasonable care to provide for the servant, so far as the work at which he is engaged will permit, a reasonably safe place in which to do his work, and to that end, if the place may become dangerous by reason of perils arising from the doing of other work pertaining to the master's business, different from that in which the particular servant is engaged, to give him such warning of the additional danger as will enable him, in the

exercise of reasonable care, to avoid them, or to guard himself against them . . . . whatever means are employed, it is the duty of the master to employ them, and that duty cannot be delegated to any person . . . . it remains the duty of the master, and the person appointed to perform it is the *alter ego* of the master, for whose negligence the master is liable. (*Bushby v. New York, L. E. & W. R. R. Co.*, 107 N. Y. 374, 1 Am. St. 844, 14 N. E. 407.) As to the performance of that kind of duty, the person so entrusted with it, if anybody is so entrusted, *is not a coservant of another employee, but he is for that purpose the master, and his act and his negligence is the act and negligence of the master himself.*"

To the same effect are *Snyder v. Railway Co.*, 60 Ohio St. 487, 54 N. E. 475; *Rogers v. Cleveland, C. C. & St. L. R. R. Co.*, 211 Ill. 126, 103 Am. St. 185, 71 N. E. 850; *Illinois Steel Co. v. Ziemkowski*, 220 Ill. 324, 77 N. E. 190, 4 L. R. A., N. S., 1161.

In *Fill v. Cunard S. S. Co.*, 217 Fed. 84, it is said:

"It is the duty of a steamship company to provide reasonable safeguards and protection against injury to those on a coal barge alongside engaged in filling the ship's bins pursuant to the orders of her captain, and the company is liable to such a person, who was injured by a sudden jet of steam and hot water allowed to escape from the vessel's exhaust without warning. . . . . I think that there can be no question but that the rule of *res ipsa loquitur* has application to the facts under discussion; indeed, the law is well settled that the owners of vessels owe a personal duty to stevedores who are engaged in loading and unloading to provide reasonable safeguards and protection against injuries, and also to warn them of any latent dangers caused by the vessel or those in charge of her navigation. (*The Chicago* (D. C.), 156 Fed. 374; *The Rheola* (C. C.), 19 Fed. 926.)"

Assignments 19, 20 and 21 are based upon the claim that the verdict of $1,250 in this case is excessive. The evidence relating to the extent of the injury is not controverted.

Respondent testifies that he was so badly scalded that when his clothing was removed the flesh was cooked to such an extent that the bone of the leg below the knee was laid bare, and the witness Vaughan, who was present when the examination was made, says that the scald was so severe that "the skin crinkled up as if it were cooked." Respondent soon thereafter went to the hospital, and testifies that at the time of the trial, which was more than a year later, he had not fully recovered, and that this injury interfered with his earning capacity. He was a laboring man of moderate means, with a family, and was for that reason compelled to take other employment and perform other labor, although at the cost of great pain and suffering. We therefore conclude that there is no merit in the contention that the verdict of $1,250 for an injury of this character is excessive.

There being no reversible error, the judgment of the court below is affirmed, with costs to respondent.

Rice, C. J., and Budge, McCarthy and Dunn, JJ., concur.