EDWIN SMITH, as Administrator, etc., of DENNIS J. SMITH, Deceased, Appellant, *v.* THE DELAWARE AND HUDSON COMPANY, Respondent.

Third Department, November 20, 1929.

*Leary & Fullerton* [*James A. Leary, Alson W. Pitken* and *Walter A. Fullerton* of counsel], for the appellant.

*Joseph Rosch* [*Raymond L. Carr* of counsel], for the respondent.

DAVIS, J. Dennis J. Smith was a brakeman and flagman employed by the defendant and was killed on December 8, 1927, while engaged in the performance of his duties in interstate commerce. It is alleged that he met his death because of the negligence of servants of the defendant, and plaintiff is entitled to recover under the provisions of the Federal Employers' Liability Act.*

Smith was one of a crew of six men on a pick-up freight train which left Delanson each week day at five-forty-five P. M. and ran southerly to Howe's Cave, and after performing some switching duties there returned to Delanson. The train, consisting of eight cars besides the engine and caboose, arrived at Howe's Cave about seven-forty-five P. M. Smith was directed by the conductor to go back to the cross-over, about 1,700 feet north of the station, to protect the rear end of the train. He took his position and remained in that vicinity until he was struck at about ten o'clock by a passenger train running north on the south-bound track. There were two main tracks on this part of the railroad and to the south.

At Howe's Cave, during the switching operations, the caboose was left on the south-bound track, and at times other cars were also standing on this track. No flagman was sent to the south at this time, so it may be assumed that Smith, who had been familiar with the usual procedure for about four months, had no reason to anticipate danger from that direction. His vigilance was naturally directed to the north to prevent a collision with a train coming from that direction.

Shortly after the train reached Howe's Cave, but after Smith had departed for his position, the conductor called the train dis-

_____
* See 35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id, 291, chap. 143; now U. S. Code, tit. 45, §§ 51-59.—[REP.

patcher on the railroad telephone to learn what trains were coming in both directions. There was no unusual movement reported at that time. As the switching was to be done on both tracks it was important that the conductor be advised of train movements. When the work had been completed and his train was ready to leave on its return trip, the conductor again called the dispatcher at about nine-fifteen. He was then advised that a regular passenger train would come north against traffic on the south-bound track, due to the fact that a freight train was having some trouble on the north-bound track and was in the way. Evidently the conductor was ordered to hold his train until the passenger train had passed. A flagman had been sent out to the south, but he was called in some time before the accident, and the track was cleared. All this occurred thirty minutes or more before the passenger train was due to arrive at the station. With all of the men available to send to notify Smith of this new peril to which he was exposed, the conductor gave him no warning. There were signals that might have been given to call the flagman in. His duties were at an end for his train was clear of the south-bound track and was in no danger of a collision from the north. Of course, Smith knew nothing of these facts. The engineer of the passenger train could have been notified that Smith was on the south-bound track, for it appears that the engineer did not pass Howe's Cave until he got a signal from some one on the pick-up train. Knowing the custom of protecting the rear of a train, the engineer would naturally expect he would be likely to encounter a flagman on the south-bound track in that locality. If no adequate warning was given, it would be a negligent act to run him down.

North of the station there was a sharp curve with high banks, so that Smith could not see the approaching train until it was almost upon him. The headlight and the whistle signals would give him no sufficient warning because he was expecting the train to pass on the other track. The result was he was struck and killed while walking north on the south-bound track, carrying a lantern.

As a nonsuit was granted, we have stated the facts most favorably to appellant. All these circumstances may as a question of fact indicate a neglect of duty in failing to exercise due care and to give some notice or warning to one unaware of an impending danger. A somewhat similar case is that of *Alouro* v. *Syracuse, Binghamton & New York R. R. Co.* (133 App. Div. 934, no opinion). In that case men were at work shoveling out switches near the station after dark in a snow storm. The railroad company shifted a north-bound train to the south-bound track; and when it

approached, one of the workmen, seeking what he believed was a place of safety on the south-bound track, was struck and killed. The station agent, 575 feet away, who it is assumed had notice of the change, had given no warning to the workmen of the changed movement of the train. A judgment for the plaintiff was affirmed. The railroad has the right to run its trains against traffic if it suits its convenience or other purposes (See 22 R. C. L. 947, and cases cited), but where workmen or others are in a known position of danger they may be entitled to reasonable warning of a movement of trains to some extent unusual and unexpected. (*Felice* v. *N. Y. C. & H. R. R. R. Co.*, 14 App. Div. 345; *Baldwin* v. *Schenectady R. Co.*, 118 id. 441; *Fitzgerald* v. *Erie R. R. Co.*, 158 id. 801; *McAuliffe* v. *N. Y. C. & H. R. R. R. Co.*, 172 id. 597; *Slater* v. *Jewett*, 85 N. Y. 61, 71; *Hankins* v. *New York, L. E. & W. R. R. Co.*, 142 id. 416, 421; *Blanchard* v. *D., L. & W. R. R. Co.*, 211 id. 79.)

The question of contributory negligence of the decedent was one of fact. (*DiSario* v. *N. Y., O. & W. R. Co.*, 142 App. Div. 159; *Sullivan* v. *New York, N. H. & H. R. Co.*, 73 Conn. 203; *Louisville & N. R. R. Co.* v. *Trisler*, 140 Ky. 447.) The night was dark, cold and windy. It appears that during his four months' service, Smith had not known of such an unusual movement of this train. "He was not bound as matter of law to do any specific thing to discover what he had no reason to expect. * * * However he came to be where he was, he had a right to be there and the defendant had no right to run him down." (*Lamb* v. *Union R. Co.*, 125 App. Div. 286, 289, 290; revd. on other grounds, 195 N. Y. 260.) (See, also, *Beecher* v. *Long Island R. R. Co.*, 35 App. Div. 292; affd., 161 N. Y. 222.)

We cannot reinstate the verdict for the reason that the law of the case as charged would not permit recovery on any rational theory.

The judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

WHITMYER and HILL, JJ., concur; VAN KIRK, P. J., concurs in the result, with a memorandum in which HINMAN, J., concurs.

VAN KIRK, P. J. (concurring). If there is a question of fact it is, whether the conductor of the pick-up train ought to have realized that plaintiff was subjected to an unusual and extraordinary danger because the passenger train was to run north against traffic and should have warned plaintiff.

HINMAN J., concurs.

Judgment and order reversed on the law and the facts and a new trial granted, with costs to the appellant to abide the event.